Commonwealth *v.* Griffey, Appellant.

Argued April 27, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*John C. Marston,* Assistant Public Defender, for appellant.

*Stephen B. Harris,* First Assistant District Attorney, with him *Alan M. Rubenstein,* Assistant District Attorney, and *Kenneth G. Biehn,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, July 2, 1973:

John Joseph Grzyminski and Richard Larry Griffey were convicted by a jury in a joint trial in Bucks County of conspiracy and attempted burglary. Post trial motions were denied and a prison sentence of one to five years was imposed on Griffey on the attempted burglary conviction. Sentence was suspended on the conspiracy

conviction. Griffey filed an appeal in the Superior Court which unanimously affirmed "the judgment" without opinion. We granted allocatur and now reverse.

From the Commonwealth's evidence at trial, the jury was warranted in finding the following facts:

On January 25, 1968, after consuming a quantity of alcoholic beverages, James Tirendi and the appellant, Griffey, decided to "pull a heist" and under threats of physical violence from Tirendi, Ernest Doerner accompanied them and drove them in his automobile. The three proceeded to pick up John Grzyminski at his residence, after which the group stopped at a gas station where Tirendi stole a sledge hammer. Following this, the group drove around for awhile and about midnight Tirendi directed Doerner to stop in front of the Lincoln Musical Bar in Trevose, Bucks County, saying, "We're going for a drink and case the joint and then we're coming out again."

While in the establishment, Tirendi questioned the bartender about a T.V. set located behind the counter and after the bartender left their presence, Tirendi remarked to Grzyminski, "I'm coming back for that T.V. later tonight." "One of the boys" also said in the presence of the four "that cash register looks like its pretty hard to break into" to which Tirendi replied, "Don't worry about that, I'll smash it on the floor, if I have to."

After leaving the Lincoln Musical Bar the four visited another bar in Bristol where they stayed until "closing time". Shortly after 2:30 a.m. on January 26th, the four drove back to the Lincoln Musical Bar. The automobile pulled in a driveway and stopped behind some cabins on the rear of the property. Tirendi and Griffey then alighted from the vehicle and proceeded in the direction of the building in which the bar was located. The two returned to the automobile several times and on one such occasion said, "some people were

in there . . . and they would wait for awhile. . . ." Later on the lights in the bar went out and Tirendi and Griffey again exited from the automobile and proceeded towards the rear of the building. Shortly thereafter, the two ran back and Tirendi excitedly told Doerner to start the car. The manager of the bar called the state police and the four were apprehended shortly thereafter. Scratches were found on the metal plate of the lock in the door on the rear of the building.

Testifying in his own defense, Griffey disputed important portions of the Commonwealth's testimony. He stated, inter alia, that when the automobile returned to the Lincoln Musical Bar at 2:30 a.m. on January 26th, he had no prior knowledge of Tirendi's plan to commit a burglary; that after the automobile pulled onto the bar property, Tirendi then informed him he was "going to get the T.V." and Griffey told him "it was a crazy thing and let's go home"; that he and Grzyminski continued to try to dissuade Tirendi "from going in there" and urged him "to go home", but Tirendi refused to listen; that before Tirendi left the automobile the last time, Griffey saw "the barman at the window" and the only reason he accompanied Tirendi to the rear of the building was to "show him there's somebody in the place" and convince him he should go home; that when Tirendi again refused to listen and started up the stairs at the rear of the building, Griffey turned and started back to the automobile alone; that he then heard a scream and Tirendi came running back to the automobile. Griffey's testimony was corroborated in material part by Grzyminski.

The trial court refused a specific request to instruct the jury on the law concerning the effect of a co-conspirator's withdrawal from a conspiracy before the unlawful agreement is carried out, stating Griffey's testimony merely manifested "a shift of mind while the thing was going on". We conclude, under the circum-

stances, this was error and of such proportion as to require a new trial.

As stated before, Griffey was convicted of both conspiracy and attempted burglary and, needless to point out, these crimes are separate and distinct. Where two or more enter into an agreement or plan to perpetrate a burglary, the crime of conspiracy is complete. However, a conspirator may escape criminal responsibility for the burglary itself if he withdraws from the conspiracy before the burglary is committed or attempted and provided his withdrawal is communicated to his co-conspirators in sufficient time to allow them to withdraw. Cf. *Commonwealth v. Doris,* 287 Pa. 547, 135 A. 313 (1926). In other words, in order for the withdrawal to be effective, it must occur before the commission of the burglary becomes so imminent that its avoidance is out of the question. *Commonwealth v. Doris,* supra.

The credibility of Griffey's testimony was for the jury. The jury had the alternatives of believing it completely, believing a portion thereof, or rejecting it in toto. *Commonwealth v. Hornberger,* 441 Pa. 57, 270 A. 2d 195 (1970). If the jury believed Griffey when he testified he attempted to dissuade Tirendi before the latter proceeded towards the building to burglarize it, and that Griffey did nothing thereafter to encourage or aid in the commission of the crime, this would constitute a withdrawal from the burglary, and a communication of Griffey's withdrawal to Tirendi in sufficient time to permit Tirendi's withdrawal also before he proceeded to commit the crime. The issue should have been given to the jury with proper instructions.

The order of the Superior Court and the judgment of the trial court imposed on the burglary conviction are reversed, and a new trial is ordered on this charge.