459 Pa. 129 (1974)
327 A.2d 118
COMMONWEALTH of Pennsylvania, Appellee,
v.
Constance RODGERS, Appellant.
Supreme Court of Pennsylvania.
Argued November 27, 1973.
Decided October 16, 1974.
*130 William R. Bernhart, Austin, Speicher, Boland, Connor & Giorgi, Reading, for appellant.
George T. Brubaker, Asst. Dist. Atty., M.H. Ranck, Asst. Dist. Atty., D. Richard Eckman, Dist. Atty., Lancaster, for appellee.
Before JONES, C.J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*131 OPINION
EAGEN, Justice.
On June 24, 1970, the appellant, Constance Rodgers, was convicted by a jury in Lancaster County on two criminal indictments: (1) charging the possession and sale of a dangerous drug in violation of Section 780-4 of the Drug, Device and Cosmetic Act, Act of September 26, 1961, P.L. 1664, § 4, as amended, 35 P.S. § 780-4; and (2) charging the possession with intent to sell obscene books and films in violation of the Act of June 24, 1939, P.L. 872, § 524, as amended, 18 P.S. § 4524.[1] A motion for a new trial or in arrest of judgment was denied, and a prison sentence of six to twelve months was imposed on each indictment the sentences to run concurrently.[2] On appeal, the Superior Court affirmed the judgments with a "per curiam" order. Judge Hoffman filed a dissenting opinion in which Judges Spaulding and Packel joined. See 222 Pa.Super. 490, 295 A.2d 158 (1972).[3] We granted allocatur.
Initially, it is urged a new trial is required, because of three alleged errors in the trial court's instructions to the jury. Only one such assignment of error requires discussion. The other two are without a semblance of merit.
*132 At trial, the defendant introduced in evidence the testimony of several so-called character witnesses to establish her prior good reputation. In about the middle of its charge, after discussing the import of this testimony, the trial court stated, "But you must be convinced beyond a reasonable doubt, including that of good reputation, that the Defendant is innocent before you can acquit her." This, of course, was error and would require a new trial if it were the only passage in the charge on the burden of proof, which it is not.
The record discloses that in the beginning of its charge, the court instructed the jury, "The Defendant in this case comes before you presumed to be innocent and the burden rests upon the Commonwealth to prove her guilty beyond a reasonable doubt." Additionally, at the conclusion of the charge, the court, at the specific request of the defendant, instructed the jury as follows: [I]f, after consideration of all the evidence presented in this case, a reasonable doubt exists in the minds of the jury as to the innocence or guilt of the Defendant, the Defendant is entitled to the benefit of this doubt and must be acquitted."
In a multitude of decisions, this Court has ruled that in evaluating the correctness of instructions to a trial jury, the charge must be read and considered as a whole, and it is the general effect of the charge that controls. For example, see Commonwealth v. Fell, 453 Pa. 531, 309 A.2d 417 (1973); Commonwealth v. Zapata, 447 Pa. 322, 290 A.2d 114 (1972); Commonwealth v. Heasley, 444 Pa. 454, 281 A.2d 848 (1971), and Commonwealth v. Franklin, 438 Pa. 411, 265 A.2d 361 (1970). After reading and considering the instant charge in its entirety, we are completely satisfied the jury was not misled as to where the burden of proof of guilt rested. We note also, that no objection or exception of any nature was entered to the charge, indicating defense counsel was satisfied the court had made it clear to the jury *133 that the burden of proving guilt of either or both charges was upon the Commonwealth beyond a reasonable doubt. Under the circumstances, the apparent inadvertence by the trial court, now complained of, is not sufficient grounds for a new trial. Compare Commonwealth v. Fell, supra; Commonwealth v. Zapata, supra; Commonwealth v. Heasley, supra; Commonwealth v. Franklin, supra; Commonwealth v. Brown, 438 Pa. 52, 265 A.2d 101 (1970), and Commonwealth v. Newman, 276 Pa. 534, 120 A. 474 (1923).
The remaining assignment of error we find necessary to discuss concerns the validity of the defendant's conviction of possession with intent to sell obscene books and films. The books and films were introduced into the evidence at trial and were examined by both the jury and the trial judge. In relevant part, the court instructed the jury "there are three concurring things that must take place in order to establish literature or films as obscene. It must be established that the dominant theme of the material taken as a whole appeals to the prurient interest in sex; the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and the material is utterly without redeeming social value."[4] However, no expert testimony was introduced at trial to show the books and films involved met any of these criteria. It was the position of the Commonwealth that the books and films spoke for themselves and from an examination thereof, the jury could properly determine whether the books and films affronted "contemporary community standards relating to the description *134 or representation of sexual matters." Memoirs, supra, note 4, 383 U.S. at 418, 86 S.Ct. at 977.
The question before us instantly is, "Whether the defendant's constitutional safeguards were protected in regard to the alleged evidence consisting of the obscene material, by the complete failure of the Commonwealth to produce any expert testimony whatsoever as to community standards in regard to obscenity." This question of law had been an open question and never decided by the United States Supreme Court until its decision in Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 447 (1973), decided on June 21, 1973. In that decision, the Court held that there was no error in the Commonwealth's failure "to require `expert' affirmative evidence that the materials were obscene when the materials themselves were actually placed in evidence [citations omitted]. The films, obviously, are the best evidence of what they represent." Paris Adult Theatre I, supra, 413 U.S. 49, 93 S.Ct. at 2634. The Court adopted the viewpoint that "`hard core pornography . . . can and does speak for itself.'" id. at 55, 93 S.Ct. at 2634 n. 6 (quoting from United States v. Wild, 422 F.2d 34, 36 (2d Cir. 1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1644, 29 L.Ed.2d 152 (1971)).
However, during the interval between the Roth decision and the decision in Paris Adult Theatre I, state courts were forced to speculate as to the open question of whether the due process clause of the Fourteenth Amendment requires that the prosecution produce evidence of the challenged materials' patent offensiveness, prurient appeal and lack of redeeming social value. Without an authoritative resolution by the United States Supreme Court, we decided in Commonwealth v. LaLonde, 447 Pa. 364, 288 A.2d 782 (1972), that the "demands of due process" mandate "that contemporary community standards will have to be established [by expert testimony]." Id. at 377, 288 A.2d at 789. We no longer *135 maintain this position. To the contrary, the United States Supreme Court held in Paris Adult Theatre I, that expert testimony as to community standards is not constitutionally required. The Court stated, in pertinent part:
"No such assistance is needed by jurors in obscenity cases; indeed the `expert witness' practices employed in these cases have often made a mockery out of the otherwise sound concept of expert testimony."
413 U.S. at 49, 93 S.Ct. at 2634 n. 6. See also United States v. Thevis, 484 F.2d 1149 (5th Cir. 1973); United States v. Miller, 482 F.2d 1379 (9th Cir. 1973), and United States v. One Reel of Film. Gerard Damiano Productions, Inc., 481 F.2d 206 (1st Cir. 1973).
Our decision today is cognizant of the continuing duty of this Court in an area bordering First Amendment guarantees to make an ad hoc, case-by-case determination of whether trial exhibits are legally obscene. See Miller v. California, supra, note 4, 413 U.S. 15 at 24, 93 S.Ct. at 2615; Kois v. Wisconsin, 408 U.S. 229, 231-232, 92 S.Ct. 2245, 2247, 33 L.Ed.2d 312 (1972), and Roth v. United States, supra note 4, 354 U.S. at 497-498, 77 S.Ct. at 1316 (Harlan, J., concurring and dissenting). See also Commonwealth v. LaLonde, supra 447 Pa. at 372 n. 8, 288 A.2d at 786 n. 8. We have viewed the books involved and are convinced beyond any doubt the jury needed no expert guidance in determining if this material was obscene in the constitutional sense. These "books" titled "Sex Orgies" No. 1 through 10, containing no legend, included photograph after photograph in color, and approximately five to eight inches in size, graphically depicting scenes of sexual acts participated in by one male and two females. The photographs explicitly depicted acts of heterosexual intercourse, homosexual cunnilingus by the two females, various degrees of penetration, cunnilingus, fellatio, and anal sodomy. *136 Camera angles and close-ups give maximum display to the dimensions of the genitalia during the sexual activity. To say the jury needed expert help to decide if this material is "obscene" borders on the ridiculous.
The order of the Superior Court is affirmed.
POMEROY, J., concurs in the result.
MANDERINO, J., dissents.
ROBERTS, J., filed a dissenting opinion in which NIX, J., joins.
ROBERTS, Justice (dissenting).
Slightly over two years ago this Court decided Commonwealth v. LaLonde, 447 Pa. 364, 288 A.2d 782 (decided March 21, 1972). We there considered at length the arguments for and against requiring experts to testify as to contemporary community standards. We had before us decisions of other jurisdictions holding that experts were required and others that experts were constitutionally unnecessary. We probed the reasoning of these decisions and weighed the alternatives. After much thought we unanimously were of the opinion[1] that the better rule, one compelled by both the need for objectivity and due process, was to require the prosecution to produce expert witnesses. See also Duggan v. Guild Theater, Inc., 436 Pa. 191, 258 A.2d 858 (1969).[2]
*137 Today, a majority of this Court without good reason or analysis rejects our principled decision that experts are required in obscenity trials to testify to contemporary community standards. Perfunctorily bowing to Mount Olympus, the majority merely proclaims, "We no longer maintain this position." I dissent.
Nothing except a citation to Paris Adult Theater I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 447 (1973), is offered to justify this departure from precedent. I must assume, therefore, that the majority reads Paris Adult Theater I as requiring us to overrule LaLonde. This plainly is not so. Nothing in any recent obscenity decision of the Supreme Court of the United States[3] compels us to abandon the salutary principle of LaLonde.
Preliminarily, a careful examination of LaLonde supports the conclusion that the opinion was bottomed as much on state evidentiary law and state constitutional principles as it was on our assessment of federal constitutional prescriptions. If this be the correct reading, then necessarily that opinion is undisturbed by recent federal obscenity cases.[4]
Even a cursory reading of the latest obscenity decisions of the Supreme Court reveals that that Court meant only to set minimum constitutional standards. Nowhere in any opinion of that Court is there any indication that a state may not require more of the prosecution when it *138 seeks to enforce a state obscenity law. Cf. Cooper v. California, 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967). Indeed, the majority opinions in the obscenity cases[5] expressly leave unblocked the path of higher state standards.[6]
Although we are of course bound by the minimum constitutional standards enunciated by the Supreme Court, we alone have the responsibility and the paramount duty to construe our state Constitution. To safeguard individual liberties we have not hesitated in the past to go beyond minimum requirements of federal *139 constitutional law.[7] And when problems touching upon the right of free speech, free press, and free thought have arisen, we have not hesitated to be especially solicitous of these primary rights.[8] We should not hesitate here.
In LaLonde we unanimously agreed that expert testimony on the issue of community standards was necessary in order to provide the jury with objective guidelines in reaching its decision. We stated:
"`We cannot assume that jurors in themselves necessarily express or reflect community standards; we must achieve so far as possible the application of an objective, rather than a subjective determination of community standards. . . . To sanction convictions without expert evidence of community standards encourages the jury to condemn as obscene such conduct or material as is personally distasteful or offensive to the particular juror.'"
Commonwealth v. LaLonde, 447 Pa. 364, 375, 288 A.2d 782, 788 (1972) (quoting In re Giannini, 69 Cal.2d 563, 574-575, 446 P.2d 535, 543, 72 Cal.Rptr. 655, 663 (1968), cert. denied, 395 U.S. 910, 89 S.Ct. 1743, 23 L.Ed.2d 223 (1969). This basis for our decision in LaLonde is supported *140 by the recent opinion of the Supreme Court in Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).[9]Hamling stated that it is constitutionally required "to assure that the material is judged neither on the basis of each juror's personal opinion, or by its effect on a particularly sensitive or insensitive person or group." Id. at 107, 94 S.Ct. at 2902. LaLonde decided that in our Commonwealth at least, this constitutional principle would only be satisfied by requiring experts to be produced to testify as to contemporary community standards. No ground is today given for us to depart from this sound reasoning.
I dissent and would reverse appellant's judgment of sentence[10] because the prosecution did not produce expert testimony on the question of contemporary community standards. LaLonde was the law in this Commonwealth at the time of appellant's trial, and it should remain the law today. This is particularly true since no pronouncement of the United States Supreme Court requires or even suggests that our decision in LaLonde is in any way discredited.
NIX, J., joins in this dissent.
NOTES
[1] "Whoever sells, . . . or offers to sell . . . or has in his possession with intent to sell . . . any obscene literature, book, . . . or any written or printed matter of an obscene nature, . . . is guilty of a felony. . . .

"`Obscene,' as used in this section, means that which, to the average person applying contemporary community standards, has as its dominant theme, taken as a whole, an appeal to prurient interest."
[2] The trial court "allowed a supersedeas on condition an appeal is filed promptly."
[3] Judges Hoffman, Spaulding and Packel would reverse the judgment imposed on the conviction of possession with intent to sell obscene books and films only.
[4] This definition of obscenity was in accord with the views of five justices of the Supreme Court of the United States, as expressed in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). But, see and compare diverging views of the Court in Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966). Finally, see the new definition of obscenity announced on June 21, 1973, in Miller v. State of California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).
[1] A concurring opinion was filed by this writer in which I agreed that expert evidence was constitutionally necessary to establish contemporary community standards. I noted disagreement with any attempted distinction between "hard core pornography" and "mere obscenity." Commonwealth v. LaLonde, 447 Pa. 364, 378, 288 A.2d 782, 790 (1972) (concurring opinion).
[2] district attorney in his brief admits that he produced no expert testimony on this issue [contemporary community standards], yet urges us to find that the movie affronts contemporary standards. This we cannot do. Courts of law are not capable of deciding what contemporary standards are, without the benefit of any evidence whatsoever."
Duggan v. Theater Guild, Inc., 436 Pa. 191, 201, 258 A.2d 858, 863 (1969) (footnote omitted).
[3] E.g., Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); Jenkins v. Georgia, 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 640 (1974); Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); Paris Adult Theater I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 447 (1973); Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973); United States v. 12 200-ft. Reels of Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973); United States v. Orito, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973).
[4] Were I to conclude that LaLonde was dictated by our view of federal constitutional law, I would nonetheless reaffirm the principles articulated there as mandated by article I, section 7 of our Pennsylvania Constitution.
[5] The majority opinion in Paris Adult Theater I v. Slaton, 413 U. S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 447 (1973), initiates its discussion of the first amendment in this fashion.

"It should be clear from the outset that we do not undertake to tell the States what they must do, but rather to define the area in which they may chart their own course in dealing with obscene material."
Id. at 53, 93 S.Ct. at 2633. That notion is reiterated.
"The States, of course, may . . . drop all controls on commercialized obscenity, if that is what they prefer. . . ."
Id. at 64, 93 S.Ct. at 2639. And in United States v. 12 200-ft. Reels of Film, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973), the Supreme Court clearly noted that
we must leave to state courts the construction of state legislation. . . ."
Id. at 130 n. 7, 93 S.Ct. at 2670 n. 7. See also Hamling v. United States, 418 U.S. 87, 110-115, 94 S.Ct. 2887, 2904-2906, 41 L.Ed.2d 590 (1974); Miller v. California, 413 U.S. 15, 24 n. 6, 93 S.Ct. 2607, 2615 n. 6, 37 L.Ed.2d 419 (1973).
[6] That the United States Supreme Court now expects state courts to assume the responsibility of protecting individual rights in the context of obscenity prosecutions is also reflected by the eight cases involving state obscenity convictions in which the Supreme Court either denied certiorari or dismissed the appeal for want of a substantial federal question on the last day of the 1973 term. Watkins v. South Carolina, 418 U.S. 911, 94 S.Ct. 3204, 41 L.Ed. 2d 1157 (1974); Miller v. California, 418 U.S. 915, 94 S.Ct. 3206, 41 L.Ed.2d 1158 (1974); J-R Distribs., Inc. v. Washington, 418 U. S. 949, 94 S.Ct. 3217, 41 L.Ed.2d 1166 (1974); Village Books, Inc., v. Marshall, 418 U.S. 930, 94 S.Ct. 3220, 41 L.Ed.2d 1169 (1974); Enskat v. California, 418 U.S. 937, 94 S.Ct. 3225, 41 L.Ed.2d 1172 (1974); Paris Adult Theatre I v. Slaton, 418 U.S. 939, 94 S.Ct. 3227, 41 L.Ed.2d 1173 (1974); Boyd v. Ohio, 418 U.S. 954, 94 S.Ct. 3230, 41 L.Ed.2d 1175 (1974); Buckley v. New York, 418 U.S. 944, 94 S.Ct. 3231, 41 L.Ed.2d 1175 (1974).
[7] For the most recent expression of the view that this Court has the duty to consider the desirability of higher state standards, see Commonwealth v. Richman, 458 Pa. 167, 320 A.2d 351, 361 (1974) (Eagen, J., concurring, joined by Jones, C.J.). For other examples of our refusing to limit our decisions to minimum federal constitutional standards, see Commonwealth v. Mills, 447 Pa. 163, 286 A.2d 638 (1971); Commonwealth v. Blackman, 446 Pa. 61, 285 A.2d 521 (1971); Commonwealth v. Ware, 446 Pa. 52, 284 A.2d 700 (1971), cert. granted, 405 U.S. 987, 92 S.Ct. 1254, 31 L.Ed.2d 453, order vacated and cert. denied, 406 U.S. 910, 92 S.Ct. 1606, 31 L.Ed.2d 821 (1972); Commonwealth v. McIntyre, 417 Pa. 415, 208 A.2d 257 (1965).
[8] E.g., Commonwealth v. Mason, 456 Pa. 602, 322 A.2d 357 (1974); Commonwealth v. LaLonde, 447 Pa. 364, 288 A.2d 782 (1972); Commonwealth v. Armao, 446 Pa. 325, 286 A.2d 626 (1972); Duggan v. Theater Guild, Inc., 436 Pa. 191, 258 A.2d 858 (1969); Commonwealth v. Dell Publications, Inc., 427 Pa. 189, 233 A.2d 840 (1967), cert. denied, 390 U.S. 948, 88 S.Ct. 1038, 19 L. Ed.2d 1140 (1968).
[9] In Hamling expert witnesses were called by and testified in behalf of both the prosecution and the defense. Hamling v. United States, 418 U.S. 87, 100, 108, 94 S.Ct. 2887, 2899, 2903, 41 L.Ed.2d 590 (1974).
[10] I would reverse only appellant's judgment of sentence for possession with intent to sell obscene books. I concur in the result of affirming appellant's conviction of possession and sale of a dangerous drug. In my view, two of the claims that the drug conviction should be reversed were waived, the others are without merit. See Commonwealth v. Watlington, 452 Pa. 524, 306 A.2d 892 (1973); Pa.R.Crim.P. 1119(b), 19 P.S. Appendix.