Commonwealth *v.* Young, Appellant.

430

Argued September 13, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Marshall E. Kresman,* with him *Lewis A. Walder,* for appellant.

*Maxine J. Stotland,* Assistant District Attorney, with her *Mark Sendrow* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., March 31, 1975:

This case comes before the court on direct appeal from convictions for aggravated assault and battery, assault and battery with intent to murder, and forcible entry. Appellant alleges four errors. Since they are all without merit, we affirm the judgment of the lower court.

The facts as revealed by the record indicate that in the early morning hours of August 22, 1972, appellant and three others, Leon Kelsey, Ricky Kelsey, and David Warren, forcibly broke into an apartment occupied at that

time by Ronald Williams. Leon Kelsey pointed a gun at Williams and demanded that Williams surrender a stereo which they asserted he had stolen from the Kelseys' home. A search for the stereo proved fruitless.

Still allegedly searching for the stereo, they then ordered Williams to accompany them to a house where Williams had been during the day, and questioned the woman living there about the time of his arrival and departure. After the questioning, the five men left the house. Williams, appellant, Leon Kelsey, and David Warren remained in front of the house while Ricky Kelsey left the group and entered his own home nearby.

Ricky Kelsey reappeared several minutes later and moved across the street behind Williams. At this time, Leon Kelsey was leaning against a tree facing Williams, while appellant and David Warren were standing in front of Williams, also facing him. Just before the shot was fired, appellant and Warren dropped to the ground in a prone position, indicating they knew what was about to happen. As the bullet struck Williams in the back, he was spun around, and he saw Ricky Kelsey coming across the street with the gun in his hand. Williams then crawled under a car and began to shout for help. Appellant and his accomplices panicked and fled together.

Appellant alleges that the evidence taken as a whole failed to demonstrate beyond a reasonable doubt appellant's guilt of the crimes charged. In testing the sufficiency of the evidence, we must review the testimony in a light most favorable to the verdict winner. *Commonwealth v. Blevins*, 453 Pa. 481, 309 A.2d 421 (1973) ; *Commonwealth v. Portalatin*, 223 Pa. Superior Ct. 33, 297 A.2d 144 (1972). In so doing, we will accept as true the Commonwealth's evidence and all reasonable inferences arising therefrom. *Commonwealth v. Hornberger*, 441 Pa. 57, 270 A.2d 195 (1970). The test of the sufficiency of the evidence is whether, accepting as true all evidence, regardless of whether it is direct or circumstantial, upon

which, if believed, the fact-finder could properly have based his verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged. *Commonwealth v. Chasten,* 443 Pa. 29, 275 A.2d 305 (1971) ; *Commonwealth v. Whiting,* 409 Pa. 492, 187 A.2d 563 (1963).

In so viewing the evidence, we find it ample to support this conviction. Appellant was an active member of the conspiracy. He aided in the apartment break-in and helped in the interrogation of the victim, Williams. He then helped escort Williams to the house which was the scene of the second search. Appellant and three of his accomplices remained with Williams after they left the house, and appellant's actions just before Williams was shot indicated that he was fully aware of the impending act. Finally, appellant fled with the other co-conspirators. We find no reason to reverse the lower court on this point.

Appellant also alleges that the trial court committed error by failing to give an adequate and/or proper definition of the legal terms "conspiracy" or "conspirator." Although appellant was not actually charged with conspiracy, he was tried as a co-conspirator.

There is a question as to whether appellant preserved this point for appeal with a timely objection to the court's charge as it applied to conspiracy. At the conference in the judge's chambers before the charge to the jury, appellant requested an explanation of conspiracy. However, when the judge refused to "go through with the whole complicated explanation of the variations of conspiracies that do not apply in this case," appellant stated that he only wanted an explanation of the applicable portion. Following the judge's charge, several other points were requested and objections were made by appellant. There was, however, no specific objection to the charge in relation to conspiracy, and appellant apparently was satisfied with the instructions given on this point. Because appellant made no specific objection, he may not now complain

that the charge was incomplete. See *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974); *Dilliplaine v. Lehigh Valley Trust Company*, 457 Pa. 255, 322 A.2d 114 (1974); Pa.R.Crim.P. 1119(b).

Aside from the waiver, a review of the charge as a whole[1] indicates that it was adequate. As appellant was not indicted for conspiracy, an extensive charge on this crime would have been confusing and of dubious benefit. Neither appellant nor the Commonwealth wanted an involved conspiracy charge made to the jury. The judge's instructions on the charges, as they were derived from a conspiracy, were adequate to apprise the jury on the law as it pertained to appellant. The judge charged the jury that appellant could not be convicted merely because he was at the scene of the crime, but that there must be other evidence of his participation in the offense. The charge also stated there had to be actual conduct and not merely unsupported suspicion of the victim. We see no error which requires a reversal on this point.

Appellant next contends that the court committed reversible error in its failure to instruct that if a co-conspirator effectively withdraws from the conspiracy, he will not be held guilty for acts committed after his withdrawal. The court in *Commonwealth v. Doris*, 287 Pa. 547, 552, 135 A. 313, 315 (1926) discussed withdrawal from a conspiracy: "Whatever may be the other requirements of an effective abandonment of a criminal enterprise . . . there must be some appreciable interval between the alleged abandonment and the act from responsibility for which escape is sought. . . . The process of detachment must be such as to show not only a determination upon the part of the accused to go no further, but also such as to give his co-conspirators a reasonable opportunity, if

---

1. It is fundamental that a jury charge must be evaluated by a reading and consideration thereof in its entirety. *Commonwealth v. Fell*, 453 Pa. 531, 309 A.2d 417 (1973); *Commonwealth v. Toney*, 439 Pa. 173, 266 A.2d 732 (1970).

they desire, to follow his example and refrain from further action before the act in question is committed." See also *Commonwealth v. Griffey*, 453 Pa. 142, 307 A.2d 283 (1973) ; *Commonwealth v. Sampson*, 445 Pa. 558, 285 A.2d 480 (1971) (ROBERTS, J., Concurring Opinion).

Here, there was no indication that any of the defendants withdrew from the conspiracy, but rather the evidence clearly indicates that all four defendants were involved in some way with the actual shooting. Appellant has offered no evidence that he abandoned the criminal enterprise and conveyed this fact to his co-conspirators. A charge on a point or issue which is unsupported by any evidence is likely to confuse the jury and obstruct justice. *Commonwealth v. Heckathorn*, 429 Pa. 534, 241 A.2d 97 (1968) ; *Commonwealth v. Cofield*, 226 Pa. Superior Ct. 266, 307 A.2d 316 (1973). The lower court was correct in refusing this requested charge.

Finally, appellant contends the trial court committed reversible error when it allowed the prosecution to read at trial an extra-judicial statement made by appellant to a police detective.[2] This statement was an attempt by appellant to exculpate himself from any guilt for the shooting and as such, the statement was relevant and material. Specifically, appellant complains about the reference in the statement to drinking wine in a public area.

The reference to drinking wine was a passing one at best. After the statement was read to the jury, no further remark concerning the drinking was made. There was

---

2. Appellant's statement read at trial is as follows: "David Warren, Leon Kelsey and I had a quart of wine and were standing on the corner of 13th and Erie Avenue right before they picked us up. We started drinking the wine. And Leon Kelsey started telling me about an argument he had in the house with his mother and them.

"While we were standing there, the boy was standing in front of a girl's house, about four to six houses away. Then we heard a gunshot. The boy fell, and we ran. I know the boy by seeing him, but I don't know his name." (NT 83)

absolutely no attempt to imply that appellant was an alcoholic nor to suggest that he was guilty of moral turpitude. The reference, if error at all, was harmless. Where harmless error is committed, a new trial is not mandated. Cf. *Commonwealth v. Ravenell*, 448 Pa. 162, 292 A.2d 365 (1972) ; *Commonwealth v. Smith*, 443 Pa. 151, 277 A.2d 807 (1971). We find no merit in appellant's contention.

For the above stated reasons, we affirm the judgment of sentence of the lower court.

SPAETH, J., concurs in the result.

---

DISSENTING OPINION BY HOFFMAN, J.:

The sole meritorious issue in this appeal is whether the trial judge committed reversible error by instructing the jury that it could find appellant criminally liable for the acts of his co-conspirators, but failing to charge either as to the elements of conspiracy or as to the effect of the termination of the conspiracy.

At 12:45 a.m. on August 21, 1972, Ronald Williams, while lying in bed in a friend's apartment in North Philadelphia where he was staying, heard the door being broken down. Appellant, Richard Kelsey, Leon Kelsey, and David Warren then entered the apartment. The four searched for a stereo set which they claimed that Williams had stolen, but found nothing. One or more of the four men ordered Williams to leave his apartment and come with them. The four men and Williams went to the house near Thirteenth and Erie where Williams claimed that he had been during the day. One or more of the four questioned the woman who lived there about the time of Williams' arrival and departure. The four men and Williams then left and went onto the street. Williams was shot in the back while appellant, Warren, and Leon Kelsey were facing him. Immediately before Williams was shot, Warren and appellant had leaned back on the ground, as if

anticipating the shot. Spun around by the force of the bullet, Williams saw Richard Kelsey cross the street with the gun in his hand. All four men ran towards Broad Street. Williams later named appellant as the owner of the gun.[1]

Appellant's jury trial, before the Honorable John A. GEISZ, of the Philadelphia Common Pleas Court, was severed from the trial of his three companions.[2] On October 3, 1973, appellant was found guilty of forcible entry, aggravated assault and battery, and assault with intent to kill, Judge GEISZ denied appellant's post-trial motions. This appeal followed.

As it appeared that it was not appellant, but one of his companions, who shot Williams, the Commonwealth based its case on the charges of aggravated assault and battery and assault and battery with intent to kill on a conspiracy theory.[3] Nevertheless, the trial judge devoted only two sentences of a more than twenty-page charge to the vicarious liability of a co-conspirator.[4] Although

---

1. The Commonwealth relied on the possibly coordinated movement of Warren and appellant before the shot was fired, the fact that all four fled in the same direction, and appellant's apparent ownership of the weapon used in the shooting as circumstantial evidence of conspiracy.

2. At a separate trial, completed before the trial of appellant, his three co-defendants were acquitted of assault with intent to kill, and convicted of lesser charges.

3. Appellant was not charged with conspiracy as a separate substantive crime.

4. "Where the existence of a conspiracy is established, the law imposes upon a conspirator full responsibility for the natural and probable consequences of acts committed by his fellow conspirator or conspirators if such acts are done in pursuance of the common design or purpose of the conspiracy. Such responsibility ... extends even to a homicide which is a contingency of the natural and probable execution of the conspiracy, even though such homicide is not specifically contemplated by the parties." Cf. *Commonwealth v. Thomas*, 410 Pa. 160, 165, 189 A.2d 255, 258 (1963); cert. denied, 375 U.S. 856 (1963).

the judge charged as to the legal consequences of a finding of conspiracy, he nowhere defined the elements of conspiracy, thus leaving the jury to guess at what the instruction might have meant.[5]

"[I]n charging a jury, it is the primary duty of the trial judge to clarify the issues so that the jury may understand the questions to be resolved." *Commonwealth v. Beach,* 438 Pa. 37, 40, 264 A.2d 712, 714 (1970), citing *Commonwealth v. Meas,* 415 Pa. 41, 202 A.2d 74 (1964). " 'As to serious crimes, it is a fundamental duty of the trial judge to give full and explicit instructions as to the nature of the charges. . . . [W]e cannot assume that the jury understood clearly the exact issues involved or because of exposure are learned in the law.' " *Commonwealth v. McMillion,* 215 Pa. Superior Ct. 306, 309, 265 A.2d 375, 376 (1969), quoting *Commonwealth v. Weatherwax,* 166 Pa. Superior Ct. 586, 589, 73 A.2d 427 (1950). Aggravated assault and battery, of which appellant was convicted, has been held to be a serious crime, requiring the trial judge to instruct specifically on the nature of the charge against the appellant. *Commonwealth v. Franklin,* 160 Pa. Superior Ct. 484, 52 A.2d 230 (1947). Failure to give such full and explicit instructions is reversible error. *Commonwealth v. McMillion,* supra.

The Commonwealth contends that appellant has waived any objection to this omission from the charge by failing to comply with Rule 1119(b), Pa. R.Crim.P. This Rule states that "[n]o portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate." The record indicates that, before beginning his charge to the jury, the trial judge conferred with counsel in chambers. Appellant's attorney first asked the trial judge to delete all references to conspiracy in the

---

5. Nor did the instructions concerning the liability of a principal in the second degree or criminal liability in general fill this void.

charge. The judge admitted that he "was hoping [he] could get away from using the word conspiracy. Because there is no conspiracy indictment here. And conspiracy is confusing to most people." When it appeared that the trial judge would charge on conspiracy, counsel for appellant requested that "Your Honor then go into an explanation of conspiracy. Because otherwise I feel that it would not have been properly explained to the jury." This was an objection, timely made, specifically directed to the omission of a definition of conspiracy from the charge. This objection was sufficient to preserve this point for appeal.

The trial judge also erred in refusing appellant's proposed point for charge dealing with the termination of a conspiracy: "If a common enterprise is at an end the acts and declarations of one of the alleged conspirators are not competent to establish the guilt of any of the other alleged participants." This charge follows language in *Commonwealth v. Holloway*, 429 Pa. 344, 240 A.2d 532 (1968). The Commonwealth claims that the judge properly refused to give this charge because there was no evidence that the conspiracy had terminated at any time relevant to the testimony at trial. A properly instructed jury, however, might reasonably have concluded that the conspiracy which appellant joined had been limited to, and had terminated after, the search of Williams' apartment, relying, for example, on testimony elicited from Williams on cross-examination to the effect that "[on] 13th Street [appellant] didn't get involved in the situation."

Nor is the trial judge's error in failing adequately to charge the jury on the liability of a co-conspirator rendered harmless by the possibility that the jury might have found appellant guilty as a principal in the second degree, rather than as a co-conspirator. "The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error.

It is rather, even so, whether the error itself had substantial influence. If so, *or if one is left in grave doubt,* the conviction cannot stand." *Commonwealth v. Anskate,* 221 Pa. Superior Ct. 122, 125, 289 A.2d 156, 158 (1972), quoting *Commonwealth v. Savor,* 180 Pa. Superior Ct. 469, 119 A.2d 849 (1956), quoting *Commonwealth v. Blose,* 160 Pa. Superior Ct. 165, 50 A.2d 742 (1947), quoting *Kotteakos v. United States,* 328 U.S. 750, 765 (1946). (Emphasis supplied.) See also *Commonwealth v. Rose,* 457 Pa. 380, 321 A.2d 880 (1974), (JONES, C.J., concurring).

The record before this court creates grave doubt as to whether the jury convicted appellant as a principal in the second degree, or as a co-conspirator. Although the court referred only briefly to the liability of a co-conspirator, the prosecutor, in his closing argument immediately preceding the judge's charge, had devoted three pages to telling the jury, in rather conclusive terms, that appellant was liable for the shooting under a conspiracy theory, ending with the statement that "[a]ll these men are liable for shooting Ronald Williams." "[W]e should not affirm a conviction on the basis of an assumption that the jury applied the correct standard when it is plain that it might not have." *Commonwealth v. McFarland,* 226 Pa. Superior Ct. 138, 142, 308 A.2d 126 (1973). As it is not clear that the jury, in convicting appellant on the various charged offenses, did not rely on the defective conspiracy charge, appellant must be granted a new trial.[6]

---

6. Appellant's other contentions lack merit. Appellant contends that there was insufficient evidence to convict him of aggravated assault and battery and assault and battery with intent to kill, by means of a conspiracy theory. "However, it is established law in this Commonwealth that a conspiracy may be proved by circumstantial evidence as well as by direct evidence." *Commonwealth v. Eiland,* 450 Pa. 566, 570, 301 A.2d 651, 652 (1973). In *Eiland,* such circumstantial evidence of conspiracy was held sufficient to sustain the conviction of a gang member for second de-

The judgment of the court below should be reversed, and a new trial granted.

JACOBS, J., joins in this dissenting opinion. ·

---

gree murder, although there was no evidence to show that he had personally participated in the shooting.

Appellant also contends that the trial court erred in admitting an exculpatory statement made by appellant shortly after the shooting in which appellant stated that he, David Warren, and Leon Kelsey had been standing on the corner of 13th and Erie drinking wine when the shooting occurred. This statement, an admission and attempted exculpation by appellant, was clearly material. Moreover, the passing reference to wine in no way implied that appellant was an alcoholic, or guilty of "moral turpitude," as appellant suggests.