350 A.2d 867

**COMMONWEALTH of Pennsylvania,**

**Appellee,**

v.

**Harold ROUX, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued Nov. 17, 1975.

Decided Jan. 29, 1976.

484

Sheldon C. Jelin, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., James J. Wilson, Philadelphia, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

On August 8, 1974, the appellant, Harold Roux, was adjudged guilty, after a nonjury trial, of murder in the second degree and conspiracy. Post trial motions were filed and denied and Roux was placed on probation for twenty years on the murder conviction, conditioned, inter alia, that he, an eleventh-grade dropout, finish both highschool and college. Sentence was suspended on the conspiracy conviction. An appeal from the judgment of sentence imposed on the murder conviction was filed in this Court. An appeal from the order on the conspiracy conviction was filed in the Superior Court and later certified here.[1] The appeals were then consolidated for argument and disposition.

Initially, Roux contends that the evidence presented at trial was insufficient to support a verdict of guilty of conspiracy and, consequently, the verdict of murder in the second degree which resulted therefrom. We have said many times that "[o]n appeal from a criminal conviction, the test for evaluating the sufficiency of the evidence is whether, viewing the entire record in the light most favorable to the Commonwealth, a finder of fact could reasonably have found that all elements of the crime charged had been proved beyond a reasonable doubt." *Commonwealth v. Lowe*, 460 Pa. 357, 358–359,

---

1. The question has not been raised and for the purposes of this opinion we do not decide if the order of the trial court suspending sentence on the conspiracy conviction is an appealable order.

333 A.2d 765, 766 (1975). See also *Commonwealth v. Lee*, 450 Pa. 152, 299 A.2d 640 (1973).

The evidence presented at trial, considered in accordance with the above standard, was sufficient for the trial court to have found the following facts: In the early morning hours of November 10, 1973, one Domingo Martinez entered the Oxford Bar located in Philadelphia. Soon thereafter, Martinez became embroiled in an altercation with Herbert "Junior" Pennington over the operation of the bar's cigarette vending machine in which Martinez had apparently lost some money. Before any blows were exchanged, however, the bartender separated the potential combatants and each took up a seat at opposite sides of the bar; Pennington rejoining his companions Clenzo West, Albert Brown, Ray McClendon and the appellant, Harold Roux. At this point, Roux said to Pennington, "Be cool 'June', be cool 'June'; that is a head." Pennington interpreted this admonition to mean that Martinez was a potential robbery victim.

Martinez remained in the bar for approximately forty-five minutes before leaving. During this period of time, Roux and McClendon was seen passing a black-handled knife, the eventual murder weapon, between themselves while they sat at the bar. When Martinez left the bar he was followed, shortly thereafter, by Roux, McClendon, Pennington, West and Brown. These five individuals came upon Martinez in the street outside the bar and commenced beating him with their fists and various implements. This beating lasted for approximately two or three minutes during which Martinez was forced to the ground. The last two assailants beating Martinez were Roux and McClendon, the three other confederates having crossed the street to a nearby corner. McClendon then took the aforementioned black-handled knife from Roux and, while Roux was walking away, McClendon stabbed Martinez three times. Everybody then fled the scene with Roux taking the murder weapon and hiding it

at the home of his girl friend. Martinez was later found dead from stab wounds of the thorax.

Since the Commonwealth proceeded on the theory that, although Roux was not the actual stabber of Martinez, he was a participant in the beating which resulted in Martinez's death, it was necessary for the Commonwealth to prove that he shared with his fellow assailants a common understanding or agreement which is the heart of every conspiracy.[2] Cf. *Commonwealth v. Waters*, 463 Pa. 465, 345 A.2d 613 (1975). Instantly, Roux claims there was no evidence presented at trial showing any actual agreement or plan to attack Martinez.[3]

However, the Commonwealth is not required to establish the existence of a conspiracy by direct proof of

2.  The Crimes Code, Act of December 6, 1972, P.L. 1482, § 1, 18 Pa.C.S.A. § 903 contains the following definition of criminal conspiracy:
    "(a) Definition of conspiracy—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
    (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
    (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime."

3.  Roux argues that the testimony of Pennington, called as a Commonwealth witness, mandates a finding that no agreement or plan to attack Martinez did, in fact, exist. Pennington testified the five assailants left the bar on their own initiative and without any common understanding to assault Martinez. He further testified that the remarks by Roux, marking Martinez as a potential robbery victim, had been completely forgotten by the time of their departure from the bar.
    However, the mere calling of a witness does not mean that the party thereby admits as true everything the witness may say, nor is the calling party estopped from proving the facts to be otherwise by other evidence. *Commonwealth v. Mahoney*, 460 Pa. 201, 331 A.2d 488 (1975). Furthermore, it is well-settled that the finder of fact may believe all or a part of or none of the testimony of any witness. *Commonwealth v. Mahoney, supra; Commonwealth v. Reid*, 448 Pa. 288, 292, 292 A.2d 297 (1972). Therefore, the finder of fact was free to disregard Pennington's testimony in whole or in part.

an explicit or formal agreement. *Commonwealth v. Waters, supra; Commonwealth v. Dickerson*, 406 Pa. 102, 106, 176 A.2d 421 (1962). Indeed, direct proof of an explicit or formal agreement to commit a crime can seldom, if ever, be supplied and it need not be for "it is established law in this Commonwealth that a conspiracy may be proved by circumstantial evidence as well as by direct evidence." *Commonwealth v. Eiland*, 450 Pa. 566, 570, 301 A.2d 651, 652 (1973). See also *Commonwealth v. Yobbagy*, 410 Pa. 172, 177, 188 A.2d 750 (1963). Thus, while more than mere association must be shown, "[a] conspiracy may be inferentially established by showing the relation, conduct or circumstances of the parties, and the overt acts on the part of co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed: [cite omitted]." *Commonwealth v. Horvath*, 187 Pa.Super. 206, 211, 144 A.2d 489, 492 (1958). See also *Commonwealth v. Eiland, supra; Commonwealth v. Neff*, 407 Pa. 1, 6, 179 A.2d 630 (1962).

■ Herein, there was sufficient evidence presented of shared criminal intent and activity to justify the trial court's finding that Roux was part of a conspiracy to physically assault Martinez. In view of the admonition given by Roux to Pennington in the Oxford Bar, the passing between Roux and McClendon of the eventual murder weapon and the proximity in time between Martinez's leaving the bar and the departure by the five assailants, it is unlikely that the subsequent concerted attack upon Martinez was by sheer coincidence.

Roux relies upon *Commonwealth v. Wilson*, 449 Pa. 235, 296 A.2d 719 (1972), in support of his argument that the Commonwealth failed to demonstrate the criminal intent or unlawful agreement which is the "nexus" that renders all members of a criminal conspiracy responsible for the acts of any of its members. In *Wilson*, as here, a barroom altercation eventually resulted in a

stabbing death and, based on the evidence presented at trial, this Court held that the Commonwealth had failed to establish any common understanding or agreement. However, in *Wilson*, unlike the instant situation, the evidence indicated that the fight which resulted in the victim's death was spontaneous rather than planned. And, whereas Roux was clearly aware of the presence of the murder weapon, the defendant in *Wilson* did not encourage, nor was he even aware of, the use of the knife. *Commonwealth v. Wilson, supra* at 238, 296 A.2d at 721. Because of these factual dissimilarities, *Wilson* is inapposite.

Roux next contends that, even assuming the existence of a conspiracy, he had abandoned the conspiracy before the stabbing occurred. This defense, that of abandonment or withdrawal from a conspiracy is well recognized in Pennsylvania. In *Commonwealth v. Griffey*, 453 Pa. 142, 307 A.2d 283 (1973), this Court stated:

> "Where two or more enter into an agreement or plan to perpetrate a [crime], the crime of conspiracy is complete. However, a conspirator may escape criminal responsibility for the [crime] itself if he withdraws from the conspiracy before the [crime] is committed or attempted and provided his withdrawal is communicated to his co-conspirators in sufficient time to allow them to withdraw. Cf. *Commonwealth v. Doris*, 287 Pa. 547, 135 A. 313 (1926)."

*Id.* at 146, 307 A.2d at 285.[4]

██ Roux argues that an abandonment was effected by him prior to the stabbing of Martinez because he [Roux] was not present at the stabbing and because

4. The Crimes Code, supra, 18 Pa.C.S.A. § 903 provides:
"(3) if an individual abandons the agreement, the conspiracy is terminated as to him only if and when he advises those with whom he conspired of his abandonment or he informs the law enforcement authorities of the existence of the conspiracy and of his participation therein."

490

McClendon took the black-handled knife from him.[5] However, "[i]t is hornbook law that a conspirator is criminally responsible for the acts of his co-conspirators which are committed in furtherance of the common design *even though he was not present when the acts were committed.*" [Emphasis supplied.] *Commonwealth v. Burdell,* 380 Pa. 43, 49, 110 A.2d 193 (1955). As this Court noted in *Commonwealth v. Thomas,* 410 Pa. 160, 165, 189 A.2d 255, 258 (1963), cert. denied 375 U.S. 856, 84 S.Ct. 118, 11 L.Ed.2d 83 (1963):

> "Where the existence of a conspiracy is established, the law imposes upon a conspirator full responsibility for the natural and probable consequences of acts committed by his fellow conspirator or conspirators if such acts are done in pursuance of the common design or purpose of the conspiracy. Such responsibility attaches even though such conspirator was not physically present when the acts were committed by his fellow conspirator or conspirators and extends even to a homicide which is a contingency of the natural and probable execution of the conspiracy, even though such homicide is not specifically contemplated by the parties. [cite omitted]."

See also *Commonwealth v. Eiland, supra.*

■ Nor is it relevant that McClendon took the murder weapon from Roux for, as the evidence demonstrates, Roux was carrying the weapon "at the ready" where McClendon could grab it easily. Moreover, for an abandonment to be legally sufficient, it must occur before the commission of the crime becomes so imminent that avoidance is out of the question. See *Commonwealth v. Griffey, supra.* Instantly, there was no appreciable interval

5. Although Roux, in an oral statement to the police, which was admitted into evidence at trial, stated he had freely given the blackhandled knife to McClendon, the trial court, based upon other testimony, concluded the knife had been given involuntarily.

between Roux's leaving the victim and the subsequent stabbing by McClendon.

Therefore, we conclude the existence of a criminal conspiracy which resulted in the murder of Martinez was established, and that no abandonment from it was effected by Roux. Because "[n]o principle of law is more firmly established than that when two or more persons conspire or combine with one another, to commit an unlawful act, each is criminally responsible for the acts of his associate or confederate committed in furtherance of the common design," *Commonwealth v. Strantz*, 328 Pa. 33, 40, 195 A. 75, 79 (1937), the evidence was clearly sufficient to support the verdict of guilty of murder in the second degree.

Judgment and order affirmed.

JONES, C. J., took no part in the consideration or decision of this case.

NIX and MANDERINO, JJ., concur in the result.