382 A.2d 465

**COMMONWEALTH of Pennsylvania**

v.

**Roger McFARLAND, Appellant.**

Superior Court of Pennsylvania.

Submitted June 14, 1976.

Decided Dec. 28, 1977.

524

526

Francis P. Burns, Assistant Public Defender, Wilkes-Barre, for appellant.

Thomas J. Glenn, Jr., Assistant District Attorney, and Patrick J. Toole, Jr., District Attorney, Wilkes-Barre, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

After a jury trial, appellant was convicted of violating the prohibited offensive weapons section of the Crimes Code.[1]

1. 18 Pa.C.S. § 908.

Written post-verdict motions were denied, and appellant was sentenced to serve a term of imprisonment of one to four years eleven months twenty-nine days and to pay the costs of prosecution plus a fine of $500. Appellant was released on bail pending this appeal.

This case arises from the unintentional shooting death of Mary Ann Manna, age 15, by Joseph Ragoskey on May 9, 1974. Appellant first contends that the evidence was insufficient to convict him of the crime charged. We disagree.

" '[T]he test in determining if the evidence is sufficient to sustain a criminal conviction is, whether accepting as true all of the evidence of the Commonwealth, and all reasonable inferences arising therefrom, upon which the jury could properly have reached its verdict, [it was] sufficient in law to prove beyond a reasonable doubt that the appellant was guilty of the crime of which he stands convicted. See *Commonwealth v. Wrona*, 442 Pa. 201, 275 A.2d 78 (1971).' *Commonwealth v. Burton*, 450 Pa. 532, 534, 301 A.2d 599, 600 (1973). See also *Commonwealth v. Elam*, 221 Pa.Super. 315, 317, 293 A.2d 103, 104 (1972)." *Commonwealth v. Gatto*, 236 Pa.Super. 92, 95, 344 A.2d 566, 567 (1975).

Viewing the evidence in this light, the following was adduced at trial.

During the evening and early morning hours of May 8 and 9, 1974, Joseph Ragoskey, Jeffrey Pressler and appellant drove around the Hazelton area, stopping intermittently at a diner and their respective homes. At approximately 7:00 a. m. the men arrived at the home in which appellant lived with his parents. After eating breakfast, appellant's companions borrowed his car and left to purchase cigarettes. En route the two men met Mary Ann Manna and one of her friends and persuaded them to skip school. The foursome returned to appellant's house and entered the living room.

Mr. Ragoskey went into the dining area adjacent to the living room. When he returned, he was carrying a fourteen and one-half inch long sawed-off shotgun, which had been lying on a table. As he displayed the firearm to his friends,

it discharged, fatally wounding Miss Manna. Appellant, who had been taking a shower, ran into the room, attempted to render assistance and subsequently telephoned for an ambulance.

At trial, Mr. Joseph Doland testified that in January of 1974 he had purchased the firearm because he and his family had been threatened by a motorcycle gang. One evening appellant and Mr. Doland went to a farmhouse which this gang regularly frequented. When they arrived, however, police officers were on the scene conducting a totally unrelated investigation. Fearing that the gun would be discovered, Mr. Doland threw it away in some bushes near the house.

Several days later, appellant informed Mr. Doland that someone, who appellant felt was irresponsible, had found the gun. Appellant believed he could retrieve the weapon for Mr. Doland. Mr. Doland stated that he did not want the gun any more but that appellant could retrieve it if he wished. About two weeks after this conversation, Mr. Doland met appellant and Mr. Ragoskey. Appellant showed Mr. Doland the shotgun which was unloaded. Mr. Doland once again told the men that he did not want the gun. The fatal accident occurred approximately one week after this meeting.

Immediately after the shooting, appellant and the other three witnesses agreed to fabricate a story in order to protect Mr. Ragoskey's status as a parolee. After the police pointed out the inconsistencies in their explanations of the relevant events, the three men requested a private conference. During this conversation, appellant admitted to his companions that earlier on the day Miss Manna was killed, he had loaded and cocked the weapon.

Appellant testified in his own behalf. He denied that he had cocked the weapon. He admitted, however, that he had obtained the gun about one week before the shooting. He further admitted that he loaded the gun on the morning of the incident allegedly because his life had been threatened by his brother-in-law a few weeks earlier.

Under section 908(a) of the Crimes Code, "[a] person commits a misdemeanor of the first degree if, except as authorized by law, he . . . deals in, uses, or possesses any offensive weapon." Possession is an act sufficient to sustain a conviction under the Crimes Code "if the possessor knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient period to have been able to terminate his possession." 18 Pa.C.S. § 301(c). The evidence in the instant case was clearly sufficient to prove beyond a reasonable doubt that appellant possessed a sawed-off shotgun which by definition is an offensive weapon. 18 Pa.C.S. § 908(c).

█  Appellant next contends that section 908 is unconstitutional because subsection (b) places a burden of proof on a defendant to prove one of the enumerated defenses by a preponderance of the evidence.[2] It is well established that due process precludes a conviction except on proof beyond a reasonable doubt of every fact necessary to constitute the crime charged. *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *see also Commonwealth v. Moyer*, 466 Pa. 464, 353 A.2d 447 (1976); *Commonwealth v. McNeil*, 461 Pa. 709, 337 A.2d 840 (1975); *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974); *Commonwealth v. Loccisano*, 243 Pa.Super. 522, 366 A.2d 276 (1976); *Commonwealth v. Stoffan*, 228 Pa.Super. 127, 323 A.2d 318 (1974). Under this rule, a state may not shift to a defendant the burden of disproving any essential element of a crime. *Cf. Commonwealth v. Bonomo*, 396 Pa. 222, 151 A.2d 441 (1959); *Commonwealth v. Loccisano, supra.*

**2.** Section 908 provides in part as follows:
"(a) Offense defined.—A person commits a misdemeanor of the second degree if . . . [he] possesses any offensive weapon.
(b) Exception.—It is a defense under this section for the defendant to prove by a preponderance of evidence that he possessed or dealt with the weapon solely as a curio or in a dramatic performance, or that he possessed it briefly in consequence of having found it or taken it from an aggressor, or under circumstances similarly negativing any intent or likelihood that the weapon would be used unlawfully."

In *Mullaney v. Wilbur, supra,* the United States Supreme Court ruled that due process was not afforded by a Maine statute which presumed that, absent justification or excuse, all intentional or criminally reckless killings were felonious homicides punishable as murder unless the defendant proved by a fair preponderance of the evidence that the killing was committed in the heat of passion on sudden provocation. Upon such proof, the crime was punishable as manslaughter. The Court rejected respondent's contention that "heat of passion on sudden provocation [was] not a 'fact necessary to constitute the crime' of felonious homicide in Maine." *Mullaney, supra,* 421 U.S. at 697, 95 S.Ct. at 1888.

"[I]f *Winship* were limited to those facts that constitute a crime as defined by state law, a State could undermine many of the interests that decision sought to protect without effecting any substantive change in its law. It would only be necessary to redefine the elements that constitute different crimes, characterizing them as factors that bear solely on the extent of punishment." *Mullaney, supra* at 698, 95 S.Ct. at 1889.

"The result . . . where the defendant is required to prove the critical fact in dispute is to increase further the likelihood of an erroneous . . . conviction. Such a result directly contravenes the principle articulated in *Speiser v. Randall,* 357 U.S. 513, 525–526, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958):

'[W]here one party has at stake an interest of transcending value—as a criminal defendant his liberty—th[e] margin of error is reduced as to him by the process of placing on the [prosecution] the burden . . . of persuading the fact finder at the conclusion of the trial . . . .' "

*Mullaney, supra* at 701, 95 S.Ct. at 1890.

This language from *Mullaney* cast grave doubts on the validity of any statute which cast a burden on the defendant to prove any affirmative defense. In *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977),

however, the Supreme Court upheld a New York statute[3] which provided an affirmative defense to second degree murder if the defendant proved by a preponderance that he acted under the influence of an extreme emotional disorder. In reaching this decision, the Court interpreted *Mullaney* as merely standing for the proposition that

"a State must prove every ingredient of an offense beyond a reasonable doubt and that it may not shift the burden of proof to the defendant by *presuming that ingredient upon proof of the other elements of the offense.*"[4] *Patterson, supra* at 215, 97 S.Ct. at 2330, 53 L.Ed.2d at 295.

Recognizing the previously quoted statements from *Mullaney,* the Court explained that

"[t]he social cost of placing the burden on the prosecution to prove guilt beyond a reasonable doubt is thus an increased risk that the guilty will go free. While it is clear that our society has willingly chosen to bear a substantial burden in order to protect the innocent, it is equally clear that the risk it must bear is not without limits . . . . Due process does not require that every conceivable step be taken, at whatever cost, to eliminate

**3.** The relevant portions of the statute provided as follows:
"A person is guilty of murder in the second degree when:
  1. With intent to cause the death of another person, he causes the death of such person, except that it is an affirmative defense that:
    (a) The defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse . . . ."
Under New York law a defendant had the burden of proving an affirmative defense by a preponderance of the evidence.

**4.** For example, in the Maine statute involved in *Mullaney,* malice, that is lack of provocation, was part of the definition of the crime of murder; however, this *element* was presumed unless the defendant proved by a preponderance of the evidence that he acted in the heat of passion upon sudden provocation. Under the New York statute the primary definition of murder in the second degree contained no element of malice. A defendant would, however, be exonerated of murder by a showing of no malice—that he acted in the heat of passion.

the possibility of convicting an innocent person." *Patterson, supra* at 208, 97 S.Ct. at 2326, 53 L.Ed.2d at 291.

Under *Patterson,* a state is free to recognize a mitigating or exculpatory circumstance without being required to prove the nonexistence of that circumstance *if in the state's judgment* such proof would be too cumbersome, expensive and inaccurate. This rule is based on the traditional concept that it is "normally within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion . . . ." 432 U.S. at 201, 97 S.Ct. at 2322, 53 L.Ed.2d at 286–87 (citations omitted). Due process only requires proof beyond a reasonable doubt of all of the elements included in the definition of the offense. "Proof of the nonexistence of all affirmative defenses has never been constitutionally required . . . ." 432 U.S. at 210, 97 S.Ct. at 2327, 53 L.Ed.2d at 292.[5] Thus, subject to the

5. The following passage by Chief Justice Breitel of the New York Court of Appeals points out the value of the affirmative defense in our system of criminal justice.

"In the absence of affirmative defenses the impulse to legislators, especially in periods of concern about the rise of crime, would be to define particular crimes in unqualifiedly general terms, and leave only to sentence the adjustment between offenses of lesser and greater degree. In times when there is also a retrogressive impulse in legislation to restrain courts by mandatory sentences, the evil would be compounded.

The affirmative defense, intelligently used, permits the gradation of offenses at the earlier stages of prosecution and certainly at the trial, and thus offers the opportunity to a defendant to allege or prove, if he can, the distinction between the offense charged and the mitigating circumstances which should ameliorate the degree or kind of offense. The instant homicide case is a good example. Absent the affirmative defense, the crime of murder or manslaughter could legislatively be defined simply to require an intent to kill, unaffected by the spontaneity with which that intent is formed or the provocative or mitigating circumstances which should legally or morally lower the grade of crime. The placing of the burden of proof on the defense, with a lower threshold, however, is fair because of defendant's knowledge or access to the evidence other than his own on the issue. To require the prosecution to negative the 'element' of mitigating circumstances is generally unfair, especially since the conclusion that the negative of the circumstances is necessarily a product of definitional and therefore circular reason-

constraints of *Mullaney* and certain cases not relevant to the instant situation, a legislature is free to define a crime as it deems appropriate in the exercise of sound discretion.

The similarity between section 908 of the Crimes Code and section 125.25 of the New York Penal Law is readily apparent. The question which remains is whether section 908(b) imports some type of intent requirement as an essential element of the crime. *See Commonwealth v. Adams,* 245 Pa.Super. 431, 369 A.2d 479 (1976) (concerning opinion by Spaeth, J.).

"The problem of deciding whether a particular clause states a fact that constitutes a necessary element of the crime is a problem of statutory construction. The answer depends on what behavior the General Assembly intended to prohibit." *Commonwealth v. Stoffan,* 228 Pa.Super. 127, 139, 323 A.2d 318, 323 (1974) (footnote omitted); *see also Commonwealth v. Stawinsky,* 234 Pa.Super. 308, 339 A.2d 91 (1975).

In *Commonwealth v. Adams, supra,* a majority of this court agreed that section 908 was intended to establish a nearly absolute prohibition of offensive weapons stating that

"[t]he class of weapons dealt with in Section 908 have no peaceful purpose, and their only conceivable use is for purposes which our society has found to be criminal. By enacting Section 908 the legislature has clearly stated that an 'implement for the infliction of serious bodily injury

ing, and is easily avoided by the likely legislative practice mentioned earlier.

. . . . .

In sum, the appropriate use of affirmative defenses enlarges the ameliorative aspects of a statutory scheme for the punishment of crime, rather than the other way around—a shift from primitive mechanical classifications based on the bare antisocial act and its consequences, rather than on the nature of the offender and the conditions which produce some degree of excuse for his conduct, the mark of an advanced criminology." *Patterson v. New York, supra* at 212, 97 S.Ct. at 2328, 53 L.Ed.2d at 293 n. 13; *quoting People v. Patterson,* 39 N.Y.2d 288, 305–07, 383 N.Y.S.2d 573, 347 N.E.2d 898 (1976).

which serves no common lawful purpose' shall not be allowed to exist in our society." 245 Pa.Super. at 436, 369 A.2d at 482, *quoting Commonwealth v. Ponds,* 236 Pa.Super. 107, 111, 345 A.2d 253, 255 (1975) (footnote omitted). We find this reasoning persuasive.

Moreover, this position is supported by the commentary to section 5.07 of the Model Penal Code, from which section 908 was derived. In *Commonwealth v. Adams, supra,* this court quoted those comments with approval. *See also Commonwealth v. Gatto,* 236 Pa.Super. 92, 344 A.2d 566 (1975).

A comparison of section 907 with 908 demonstrates that the General Assembly possessed the ability to import an intent element into the definitional section of a crime if it so desired. The obvious purpose of requiring a criminal intent in section 907 was that the weapons encompassed by that section "have peaceful as well as lethal potentialities" and therefore "cannot be dealt with by drastic prohibition." *Commonwealth v. Adams, supra* 245 Pa.Super. at 435, 369 A.2d at 481, *quoting* Model Penal Code § 5.07, Comment (Tent.Draft No. 13, 1961).

Finally, section 103 of the Crimes Code defines the term "element of an offense." Section 908(b), which by its own wording is a defense, does not encompass such conduct as (1) is included in the definition of the offense, *see* 18 Pa.C.S. § 908(a); (2) establishes the required kind of culpability, *see* 18 Pa.C.S. §§ 301–13; (3) negatives an excuse or justification for such conduct, *see* 18 Pa.C.S. §§ 501–10; (4) negatives a *defense under the statute of limitation*; or (5) establishes jurisdiction or venue. Thus section 908(b) cannot be said to create an element of the offense.

It should be noted that the result reached in this case is not precluded by *Commonwealth v. Rose, supra, Commonwealth v. Bonomo, supra,* or their progeny. Each case of this type was decided either on state evidentiary grounds or on the basis that the fact to be proved by the defendant related to an essential element of the crime. *See, e. g., Commonwealth v. Slaybaugh,* 468 Pa. 618, 364 A.2d 687 (1976); *Commonwealth v. Graves,* 461 Pa. 118, 334 A.2d 661

(1976); *Commonwealth v. Demmitt,* 456 Pa. 475, 321 A.2d
627 (1974); *Commonwealth v. Loccisano, supra; Commonwealth v. Feldman,* 243 Pa.Super. 408, 365 A.2d 1289 (1976);
*Commonwealth v. Jones,* 242 Pa.Super. 303, 363 A.2d 1281
(1976).

■ Appellant next contends that the lower court erred in
denying his pre-trial application to quash the indictment
because it was based solely upon hearsay testimony presented to the grand jury by the prosecutor. It is well established in Pennsylvania that an indictment can be found by a
grand jury based upon hearsay testimony or upon evidence
which was incompetent or inadequate to make out a prima
facie case. *Commonwealth v. Dessus,* 423 Pa. 177, 224 A.2d
188 (1966); *see also Commonwealth v. Webster,* 462 Pa. 125,
337 A.2d 914 (1975). This contention is therefore without
merit.

■ At the close of the case, appellant moved for a
mistrial or dismissal of the charges on the grounds that the
Commonwealth failed either to call or to give notice to the
defendant that they would not call Corporal Komosinsky,
the sole witness endorsed on the bill of indictment. "There
is no duty on the Commonwealth to call witnesses whose
names appear on a bill of indictment . . . if it believes
after examination or investigation that their testimony is
unreliable, or unworthy of belief, or surplusage or irrelevant.
The law in such a case merely requires a District Attorney
to notify the Court and defense counsel that he does not
intend to call certain persons whose names appear on the bill
of indictment as Commonwealth witnesses[.]" *Commonwealth v. Jones,* 455 Pa. 488, 490–91, 317 A.2d 233, 234
(1974), *quoting Commonwealth v. Schmidt,* 437 Pa. 563, 567,
263 A.2d 382, 384 (1970); *Commonwealth v. Horn,* 395 Pa.
585, 589, 150 A.2d 872, 874 (1959); *see also Commonwealth v.
Pass,* 468 Pa. 36, 360 A.2d 167 (1976). The purpose for
requiring notification is to provide the defendant with an
opportunity to locate the missing witness. *See Commonwealth v. Detre,* 462 Pa. 344, 341 A.2d 112 (1975). In the
instant case, a review of the record indicates that Corporal

Komosinsky was present in court during the entire trial and that his identity was known to appellant's counsel. This contention is therefore without merit.

Appellant also argues that the lower court erred in failing to charge that the testimony of Joseph Ragoskey should be received with care and caution. Appellant neither submitted a request for charge nor objected to the court's failure to charge on this point. The matter is therefore waived. *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974); *Commonwealth v. Young,* 233 Pa.Super. 429, 335 A.2d 498 (1975).

For his sixth assignment of error, appellant contends that the lower court erred when it refused to order the production of certain police reports. Prior to trial, the prosecution was ordered to deliver any exculpatory material to the appellant in accordance with *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Commonwealth v. Gee,* 467 Pa. 123, 354 A.2d 875 (1976). Appellant does not now contend that the prosecution withheld exculpatory material. At trial, appellant did receive a police report of Andrew Pecile, Chief of Police of Butler Township, who testified for the Commonwealth. Appellant now contends, as he did at trial, that he was entitled to a report prepared by Corporal Komosinsky. Appellant was not entitled to this° report because the Corporal never testified at trial. *Commonwealth v. Robinson,* 229 Pa.Super. 131, 324 A.2d 441 (1974); *Commonwealth v. Swierczewski,* 215 Pa.Super. 130, 257 A.2d 336 (1969).

Appellant next argues that the sentence imposed was excessive. The sentence in the instant case was within legal limits. *See* 18 Pa.C.S. §§ 1101(3), 1104.

"It is well-settled that the sentence imposed upon a convicted defendant is within the sole discretion of the sentencing judge, whose discretion in sentencing is very broad, *see, e. g., Commonwealth v. Williams,* 456 Pa. 550, 317 A.2d 250 (1974); *Commonwealth v. Cox,* 441 Pa. 64, 270 A.2d 207 (1970); *Commonwealth v. Rodriquez,* 229 Pa.Super. 449, 323 A.2d 396 (1974). Additionally, we

should not find an abuse of discretion in sentencing, provided that the sentence imposed is within statutory limits, unless the sentence imposed is so manifestly excessive as to inflict too severe a punishment. *E. g., Commonwealth v. Person,* 450 Pa. 1, 297 A.2d 460 (1972); *Commonwealth v. Johnson,* 235 Pa.Super. 185, 340 A.2d 515, *allocatur refused,* 235 Pa.Super. xxvii (1975)." *Commonwealth v. Kaminski,* 244 Pa.Super. 388, 391, 368 A.2d 776, 777 (1976).

In his brief, appellant sets forth several factors which he contends demonstrate the excessiveness of the sentence. He does not contend, however, that the court failed to consider these factors. The lower court pronounced sentence only after a hearing and receipt of a pre-sentence report. Appellant's argument is without merit. *Commonwealth v. Kaminski, supra.*

██ Appellant also argues that the sentence was excessive because Joseph Ragoskey was sentenced to only six to twelve months imprisonment after he entered a guilty plea to involuntary manslaughter. Appellant does not, nor could he, contend that he was sentenced more severely because he elected to exercise his right to a full trial. There is no such indication in the record. Moreover, appellant and his confederates were not convicted of the same crimes or acts. According to the evidence at trial, appellant possessed, loaded and cocked the weapon and left it on the table. Absent these acts Miss Manna could not have been killed. Under such circumstances we will not compare sentences. *See Commonwealth v. Hill,* 223 Pa.Super. 42, 296 A.2d 860 (1972). Appellant's sentence was not manifestly excessive.

██ At trial Mr. Pressler and Mr. Ragoskey testified that, while they were at the police station, appellant admitted that he had loaded and cocked the weapon earlier on the day of the incident. Appellant now contends that the lower court improperly denied his pre-trial application for a bill of particulars in which he requested "copies of any written [statements] or summaries of any statements or confessions of the defendant at any time and of any witnesses to the

alleged crime." The lower court correctly denied this application because the information requested was not the proper subject of a bill of particulars.

"The purpose of [a] bill of particulars is to give notice to the accused of the offenses charged in the bill of indictment so that he may prepare a defense, avoid surprise, or intelligently raise pleas of double jeopardy and the bar of the statute of limitations. . . . It is not designed to perform the function of a discovery device and the Commonwealth's evidence is not a proper subject to which a petition for a bill may be directed." *Commonwealth v. Mervin*, 230 Pa.Super. 552, 558, 326 A.2d 602, 605 (1974).

█ Finally, in an analogous claim appellant argues that the lower court improperly denied his pre-trial request for discovery of "[c]opies of any oral summaries and/or written statements of the defendant to anyone." Pa.R.Crim.P. 310 provides in part that "[i]n no event, however, shall the court order pretrial discovery or inspection of written statements of witnesses in the possession of the Commonwealth." Thus, pre-trial statements of Mr. Ragoskey and Mr. Pressler were not the proper subject of this motion.[6]

Judgment of sentence affirmed.

HOFFMAN, J., dissents for the reasons stated in his dissenting opinion in *Commonwealth v. Walton*, 252 Pa.Super. 54, 380 A.2d 1278 (1977) and on *Commonwealth v. Riggins*, 474 Pa. 115, 377 A.2d 140 (1977).

6. Appellant contends that he needed Mr. Pressler's and Mr. Ragoskey's statements in order to prepare a suppression application. The lower court's refusal did not, however, leave him without a remedy. He should have moved for suppression under Rule 323(b) at trial after an appropriately timed request for an offer of proof. It is interesting to note that when Mr. Pressler testified as to appellant's admission, trial counsel objected solely on the grounds of hearsay and subsequently withdrew the objection. It was not until the following day when Mr. Ragoskey was prepared to testify in a similar vein that trial counsel objected and requested a mistrial on the ground that he had never been supplied with these statements. Because Rule 310 precluded discovery of these witnesses' statements and because appellant never requested an offer of proof or moved for suppression under Rule 323(b), he cannot now complain about the admission of either Mr. Ragoskey's or Mr. Pressler's testimony.

SPAETH, J., dissents for the reasons stated in his dissenting opinion in *Commonwealth v. Walton*, 252 Pa.Super. 54, 380 A.2d 1278 (1977) and his concurring opinion in *Commonwealth v. Adams*, 245 Pa.Super. 431, 369 A.2d 479 (1976).