**Commonwealth v. Greene**

*Thomas J. Wagner*, for the Commonwealth.
*David W. Wood, Jr.*, for defendant.

MELODY, *J.*, November 15, 1984—This is an appeal from a summary criminal conviction. On February 5, 1984, the defendant was stopped by Trooper S. T. Gerkovich of the Embreeville Barracks of the Pennsylvania State Police, and charged with traveling 74 m.p.h. in a 55 m.p.h. zone on the Route 30 Bypass in Caln Township, Chester County. Defendant's speed was measured with an approved speed-timing device, which had been tested within 60 days prior to the date of violation by an approved testing station.

In a hearing on April 3, 1984 before District Justice John Jeffers, sitting in for District Justice John Catanese, defendant was found guilty of violating maximum speed limits.[1] Defendant timely appealed to this court.

Defendant contends that the citation was issued in violation of 71 Pa. C.S. §2001, and therefore is void under 71 Pa. C.S. §2002. Those sections provide in full:

§2001. Issuance of citations or tickets; illegality of quota requirements.

No political subdivision or agency of the Commonwealth shall have the power or authority to order, mandate, require or in any other manner, directly or indirectly, suggest to any police officer, State Police Officer, game commission officer, fish commission officer or any other officer employed by such political subdivision or agency of the commonwealth that said police officer, state police officer, game commission officer, fish commission officer or any other officer shall issue a certain number of traffic citations, tickets or any other type of citation

---

1. 75 Pa. C.S. §3362(a) (2)

on any daily, weekly, monthly, quarterly or yearly basis.

§2002. Unenforceable tickets or citations

Any tickets or citations issued in violation of this act shall be unenforceable, null and void.

Our research discloses only one case which interprets the above-quoted statute, namely, Woolston v. Cutting,         Pa. Commw.      , 474 A.2d 698 (1984). Woolston was a class action suit brought against Abington Township and others alleging violation of the statute, and seeking the return of fines paid, the expungement of points assessed against driving records, an injunction and exemplary damages. The court held that the statute was not intended to create a civil cause of action, but instead was intended to create an affirmative defense to individual defendants, which must be raised by each accused at his criminal trial. In light of this holding, the court sustained the preliminary objections of defendants and dismissed the complaint. It is therefore clear that the statute provides an affirmative defense which defendant has timely raised.

We must determine who has the burden of proof with respect to this affirmative defense. The Commonwealth contends that defendant has the burden of proving by a preponderance of the evidence that there has been a violation of the statute. On the other hand, defendant contends that the Commonwealth has the burden of proof beyond a reasonable doubt that there was no violation of the statute. We adopt the Commonwealth's argument with respect to the burden of proof for the reasons discussed below, and hold that defendant has the burden of proving by a preponderance of the evidence that there has been a violation of the statute.

By enacting the statute, our legislature has determined that seriously objectionable police conduct,

to wit, the issuance of citations or tickets pursuant to a quota requirement, should not be tolerated. Because the statute does not negate an element of the offense of violating maximum speed limits, it is constitutionally permissible to place the burden of proving the affirmative defense by a preponderance of the evidence on the criminal defendant. See, Commonwealth v. Jones, 242 Pa. Super. 303, 363 A.2d 1281 (1976), and Commonwealth v. McFarland, 252 Pa. Super. 523, 382 A.2d 465 (1977).

The main contention to be decided is whether defendant has proved by a preponderance of the evidence a violation of the statute. In order to make this determination, it is necessary to examine the evidence introduced by defendant. Exhibit D-1, admitted into evidence at N.T. p. 106, is a memorandum dated December 5, 1983 from Sgt. (now Lt.) George P. March to Patrol Supervisors at the Embreeville Station concerning the subject of traffic citations. We quote in full that memorandum:

1. During November 1982 there were 262 Traffic Citations issued by members of this Station, during the same period of this year the number decreased to 168, a drop of 94.

2. During the Quarterly Review that I conducted with the Troopers for the third quarter it was revealed that on the average this Station had issued 30 Traffic Citations per Trooper for that quarter, 10 a month.

3. It is my personal opinion that 10 citations, on the average, per man per month is too low. Given the average number of days worked as 20 with allowance of 5 days for class, desk, holidays, etc. this still leaves 15 days available for Patrol duty. It does not seem unreasonable that over a month or a quarter a Trooper who is conscientious and aware of

his responsibility to enforce the law could not make at least a single pinch per day.

4.  Given the above, 15 per month, 45 per quarter, I should expect to see approx. 450 issuances during any given month since there are 30 persons assigned to the Patrol roster. As you can see by comparison of this number with the 168 actually issued, somewhere along the line there is failure to get the job done. My responsibility rests with identifying the problem, yours rests in seeing that those assigned to your Platoon are performing their duty as they should be. Those who are not performing their duties of observing traffic violations and taking appropriate enforcement action should be identified and counselled, if there is no improvement in their performance following counselling I will take further steps to solve the problem.

5.  As you know, the Station Commander is very aware of this Station's performance and the quality of same. The results of the Troopers, yours (sic) and my efforts are a direct reflection on his administrative and command responsibility. He has assured me that he will adopt whatever measures are necessary to obtain the productivity that is expected.

In addition to the memorandum designated at D-1, another memorandum, described by Sgt. (now Lt.) March as "class notes", was admitted into evidence as D-2 at N.T. p. 106. D-2 was dated December 8, 1983[2], and the relevant portion of this memorandum provides as follows:

4.  TRAFFIC CITATIONS . . . Second month in a row that our numbers for these months has been

_____

2.  Although the top line of the exhibit is missing from D-2, it was stated by Sgt. (now Lt.) March and agreed by Assistant District Attorney Wagner "that it was entitled Class Notes, Thursday, 8 December, '83".

lower than the same time last year. We issued 168 during November. For the number of persons assigned to Patrol we should be issuing upwards of 400 per month. An average of less than 6 per person per month is too few. Part of our job is enforcement/either you don't know a violation when you see it, you are not being properly observant or you are simply failing to take appropriate action. None of these is acceptable, *get the numbers up*.[3] The supervisors each received a memo from me detailing the Lts.' and my position on this, if you wish to read it I have no objections.

During his cross-examination, Trooper Gerkovich, the trooper who issued the citation, testified that he was familiar with both D-1 and D-2, and that both D-1 and D-2 were true and accurate copies of the memoranda. He further testified that he was not familiar with any retraction of the two memoranda which were published or distributed to the Embreeville Barracks prior to February 5, 1984, the date of issuance of the citation. During questioning by the court, Trooper Gerkovich admitted again that he knew about and had read the memorandum, D-1, prior to the date of the incident.

After weighing and balancing the evidence, we hereby decide that defendant has proved a violation of the statute and that this citation was issued during said violation. At this juncture, we wish to state that our decision is in no way a reflection on the fine character and unquestioned integrity of Sgt. (now Lt.) March. While he may not have intended to impose a quota, we find that one was in fact brought into existence for the personnel of the Embreeville Barracks through the memorandum and "class

---

3. Emphasis Added.

notes". The test is whether there was a suggestion of a certain number of traffic citations to be issued in a day, week, month, quarter or year. D-1 clearly established such a suggestion and said suggestion was further confirmed in D-2.

In conclusion, we hold that the statute in question provides an affirmative defense which defendant must prove by a preponderance of the evidence. It need only be proved that the statute was violated and that while the statute was being violated, a citation was issued. Since defendant here has met his burden of proof, we accordingly hold that the citation issued by Trooper Gerkovich on February 5, 1984 is unenforceable, null and void. Accordingly, we decide that the Commonwealth cannnot lawfully proceed with a prosecution based upon a citation which is unforceable, null and void and therefore we find defendant not guilty.