491 A.2d 181

**COMMONWEALTH of Pennsylvania**

**v.**

**Phillip Leroy BRYANT, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 15, 1984.

Filed March 29, 1985.

Petition for Allowance of Appeal Denied Oct. 4, 1985.

124

Timothy M. Carland, Public Defender, Industry, for appellant.

Edward J. Tocci, District Attorney, Beaver, for Commonwealth, appellee.

Before McEWEN, OLSZEWSKI and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal by appellant, Phillip Leroy Bryant, from the concurrent sentences of 2 ½ to 5 years imposed by the

Court of Common Pleas of Beaver County for convictions of firearms not to be carried without a license and former convict not to own a firearm. We reverse in part and affirm in part.

The facts, viewed in a light most favorable to the verdict-winner, reveal that on July 5, 1982, at approximately 7:28 p.m., City of Beaver Falls police officer Lloyd Haswell received a radio call to proceed to the rear of 705 Ninth Avenue to investigate "a complaint that a Leroy Phillip Bryant had a weapon in his possession" and he had been firing it. The officer knew appellant for some 15 years and that he had been convicted previously.

Upon the officer's arrival at the scene, he walked around to the side of the house. As he approached the rear of the residence, a juvenile by the name of Goosby ran past him. He then observed two men, one of whom was appellant, get up from the porch floor. Upon doing so, appellant and the second individual saw the officer and tried to enter the house through the back entrance. The officer then stated he saw "a .357 Magnum sticking out from the coat of Mr. Bryant, and at that time [he] grabbed the gun and the coat at the same time and placed Mr. Bryant under arrest." The weapon contained three live rounds. Thereafter, Bryant was patted down "real quick" to assure the officer that he (Bryant) had no other weapons on his person.

At trial, in contrast to the content of the suppression hearing recounted *supra*, Bessy Wise recalled looking out of her front door and seeing appellant, whom she knew for about two years as the father of her daughter's child born out of wedlock, walking on the railroad tracks next to her house in the company of one Anderson, appellant's cousin who resided at 705 Ninth Avenue. Although Ms. Wise "didn't know which of them was doing the shooting," she heard a weapon fired three times and "they were doing the shooting."

Officer Haswell repeated what he had testified to at the suppression, with the resultant admission of the weapon seized from appellant into evidence as Commonwealth's

Exhibit No. 1. The officer also testified that as of July 5, 1982, the arrest date, he believed appellant resided with his (appellant's) mother at 728 Sixth Avenue rear, Beaver Falls, Pennsylvania. The officer was sure of the address because "[t]his is the ['official'] address that he [appellant] gave the dispatcher at the time of booking." A review of the record confirms this point.

James Mittica was the next witness to take the stand. He testified to appellant being a parolee under his supervision since the 1st of March, 1982, for a 2–7-year prison term for a 1978 burglary conviction. This fact was substantiated by the Clerk of Courts of Beaver County (Pam O'Rourke), whose record search produced the conviction just mentioned at case No. 545 of 1978.

To establish appellant's lack of a license to carry a firearm, the prosecution produced the assistant chief of police for the City of Beaver Falls (Richard Pegg). He outlined his duties as the record keeper and issuer of a 12-month gun permit for residents of the City; to-wit:

They fill out an application prior to the purchase of a weapon and they enter their name, address, social security number, whether they have ever been arrested, serial number, make, description of the weapon, and then what I do is after I receive the application I run a records check on them through the FBI and the state police and local police departments and if they have ever been arrested before we don't issue a gun permit to them.

A check of the police ledger, containing the names of those individuals to whom licenses were issued for one year prior to and after the 5th day of July, 1982, by the City of Beaver Falls police department, revealed that no gun permit had been issued to either a Phillip Leroy Bryant or Leroy Phillip Bryant during the period cited.

The assistant chief also noted:

The Third Class City Code only permits [the City of Beaver Falls police department] to issue gun permits. The Sheriff's Department can't issue gun permits in the City of Beaver Falls or no [sic] other agency.

Further, the witness remarked that he issued gun permits only to the residents of the City of Beaver Falls. Anyone residing outside the city limits would have to go to the Sheriff's Department in Beaver County to secure such a license.

The only witness to testify on behalf of the defense was James Mittica, who admitted that from "the latter part of April [of 1982] until the arrest date for this offense Mr. Bryant was not accessible to [the agent]." Thereafter, counsel for the defense renewed his demurrer in the form of a motion for a directed verdict claiming that because he had proven through the parole agent that appellant had absconded, the Commonwealth could not "rely on that residence in the City of Beaver Falls ... [to support] the unlicensed firearms charge." Further, defense counsel argued that the Commonwealth had not proven that appellant had not obtained a license from outside Beaver Falls. In other words, according to the defense, the Commonwealth was obligated to produce evidence that appellant was not licensed *anywhere in Pennsylvania* to carry a weapon.

The trial court disagreed with counsel for the defendant, charged the jury and imposed sentence following the denial of post-verdict motions. This appeal ensued.

Appellant raises three issues for our consideration. Since the first (concerning suppression of the evidence) and the third (dealing with the allegedly excessiveness of the sentence) were adequately covered by the trial court's opinion, we adopt it as our own and for allocatur purposes. This leaves for disposition the second claim contesting the sufficiency of the evidence, i.e., the prosecution's purported failure to establish the lack of licensure, barrel length and operability of the weapon seized from appellant's person.

The licensure argument is framed by appellant as one in which he concedes the presentation of evidence of nonlicensure by Assistant Chief Pegg as to "the City of Beaver Falls within a year of the date of the alleged offense." However, he goes on, because there was evidence that he left the Beaver Falls area, the prosecution was required to

produce evidence that he "was not licensed by any other licensing authority in the Commonwealth." Our review of the law on this subject lends support to appellant's position.

■ To start with, it is clear that due process requires the prosecution in a criminal case to prove beyond a reasonable doubt every element necessary to constitute the crime charged. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). This precept was adopted by our Supreme Court in *Commonwealth v. McNeil*, 461 Pa. 709, 337 A.2d 840 (1975) to reverse a conviction of a person charged with violating the precursor to 18 Pa.C.S.A. § 6106(a), 18 P.S. § 4628(e), in the face of a record containing not a single word relating to the accused's lack of a license.

Prior to *McNeil*, as to section 4628(e) violations, the practice was to place the burden of persuasion on the defendant to come forward with evidence of licensure. *Id.* The prevailing rationale was that: 1) the prosecution should not be required to prove a negative; and 2) it would in many cases cast a great burden upon the prosecution if it were required to prove that no license had been issued to the defendant by an individual authorized to do so in any of the numerous localities in a given state. *See* Anno.: Burden of Proof as to Lack of License in Criminal Prosecution For Carrying or Possession of Weapon Without License, 69 A.L.R.3d 1054, § 6 (Discussing cases on this matter).

As to Point # 1, as already mentioned, the *McNeil* Court discontinued the requirement that the defendant be obligated to prove licensure since this amounted to an unconstitutional shifting of the burden of proving an essential element of the crime of carrying a firearm without a license to the defendant.

Similarly, the claim that the prosecution would be unduly burdened in having to prove the absence of licensure by securing verification of such a fact from each and every person and/or agency authorized to do so has been rendered impotent, at least in this Commonwealth. This point becomes evident from a review of the applicable statutes.

For example, the Information issued against appellant charged him with, among other things, violating section 6106(a), which reads: "No person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as provided in this subchapter." The Act of 1972, December 6, P.L. 1482, No. 334, § 1, effective June 6, 1973; 18 Pa.C.S.A. § 6106(a).

Under subsection (c) of section 6106, we learn that a county treasurer may issue a license, for a period not exceeding one year, to a hunter, fisherman and dog trainer. A copy is to be forwarded to the Commissioner of the Pennsylvania State Police. We receive further direction as to who may issue a license from section 6109, which is part of the "subchapter" referred to in section 6106(a) denominated *SUBCHAPTER A*—UNIFORM FIREARMS ACT. Section 6109 provides:

(a) **Issue of license.**—The chief or head of any police force or police department of a city, and, elsewhere, the sheriff of a county, may, upon the application of any person, issue a license to such person to carry a firearm in a vehicle or concealed on or about his person within this Commonwealth for not more than one year from date of issue, if it appears that the applicant has good reason to fear an injury to his person or property, or has any other proper reason for carrying a firearm, and that he is a suitable person to be so licensed.

(b) **Form of license.**—The license shall be in triplicate, in form to be prescribed by the Pennsylvania State Police, and shall bear the name, address, description, and signature of the licensee and the reason given for desiring a license. The original thereof shall be delivered to the licensee, the duplicate shall, within seven days, be sent by registered or certified mail to the Commissioner of the Pennsylvania State Police, and the triplicate shall be preserved for six years by the authority issuing said license.

**(c) Fee.**—The fee for issuing such license shall be 50 cents, which fee shall be paid into the county treasury, except that if the applicant exhibits a resident hunter's license issued to him for the current license year, the fee shall not be charged.

**(d) Revocation.**—Any such license to carry firearms may be revoked by the person issuing the same, at any time, upon written notice to the holder thereof.

The Act of 1972, December 6, P.L. 1482, No. 334, § 1, effective June 6, 1973; 18 Pa.C.S.A. § 6109.

We see that under the provisions of both sections, a copy of the issued license is forwarded to the Commissioner of the Pennsylvania State Police in Harrisburg, Pennsylvania, the central depository for the keeping of such records in the Commonwealth, *see* 73 Pa.Code §§ 33.11(b), 33.14(b), and is valid for no longer than one year. 18 Pa.C.S.A. §§ 6106(c), 6109(a).

Thus, the former complaints lodged by law enforcement officials that it was unduly burdensome and costly to obtain documentation from the respective officials in each of the 67 counties in the Commonwealth, as to whom licenses had been issued, has been remedied with the collection of such data in Harrisburg. *Cf. Commonwealth v. McFarland,* 252 Pa.Super. 523, 532, 382 A.2d 465, 470 (1978) ("Under *Patterson [v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) ], a state is free to recognize a mitigating or exculpatory circumstance without being required to prove the nonexistence of that circumstance *if in the state's judgment* such proof would be too cumbersome, expensive and inaccurate. This rule is based on the traditional concept that it is 'normally within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion....' 432 U.S. at 201, 97 S.Ct. at 2322, 53 L.Ed.2d at 286–87 (citations omitted)." (Emphasis in original)).

▪ Access to the content of the files can be had by law enforcement officials by contacting the State Police in Har-

risburg and requesting a check of its records to ascertain whether an individual charged with a weapon offense has been licensed by an authority in the Commonwealth. And, the State Police certificate of nonlicensure is admissible in court as evidence sufficient to establish a violation of section 6106(a). *See, e.g., Commonwealth v. Cunningham*, 275 Pa.Super. 46, 418 A.2d 603 (1980); *Commonwealth v. Hill*, 251 Pa.Super. 492, 380 A.2d 887 (1977).

Based upon the ease with which the prosecution can verify the existence or absence of licensure as to a defendant, we see no justification for the assistant district attorney in the case at bar claiming that he need only prove appellant's nonlicensure in the locality where the charge arose (herein Beaver Falls) since regulation of deadly weapons is provided to cities such as Beaver Falls in section 37403(26) of The Third Class City Code. The Act of June 23, 1931, P.L. 932, art. I, § 101; as amended August 24, 1953, P.L. 1337, § 1; 53 P.S. § 37403(26).[1] This position, if embraced by the Court, would convert the verbiage in sections 6106 and 6109, concerning the forwarding of all license applications to the Commissioner of the State Police, to mere surplusage (and this we may not attribute to the Legislature, *see* 1 Pa.C.S.A. §§ 1921(a), 1922(1) & (2)).

Further, there would be no need for the Commonwealth to require the collating of such information if any locality in Pennsylvania could establish a violation of section 6106(a) by merely proving that the accused failed to comply with a local ordinance in contradistinction to a state-wide requirement for verification. This, on its face, would appear to exceed the limits for regulation of firearms referred to in 18 Pa.C.S.A. § 6120.[2]

**1.** Paragraph 26 of section 37403 provides:

**Regulate guns, et cetera.**—To regulate, prohibit, and prevent the discharge of guns, rockets, powder, or any other dangerous instrument or combustible material within the city, and to prevent the carrying of concealed deadly weapons.

**2.** Section 6120 provides, in relevant part:

**(a) General rule.**—No county, municipality or township may in any manner regulate the lawful ownership, possession or transpor-

■ It is nowhere evident that by the enactment of paragraph 26 of section 37403 of The Third Class City Code the Legislature intended "that within a particular territorial jurisdiction, the right to issue a license or permit to a person residing therein is confided exclusively to a designated licensing authority, and hence, a permit issued to a resident of such jurisdiction or indeed to any other person by a[n] ... official who lacks the requisite authority within the jurisdiction is not a defense," as argued by the prosecution. *See* 94 C.J.S., Weapons, § 11 at 505 (Footnotes omitted). On the contrary, a reading of subsections (c) and (a) of sections 6106 and 6109, respectively, refutes this proposition since a local official, such as the chief or head police officer of a city, county treasurer or a sheriff, is authorized to issue a license not only to a local resident but to any citizen of the Commonwealth, and the validity of the permit is coterminous with the boundaries of the State itself. 94 C.J.S., Weapons, § 11 at 505. Ergo, to agree with the prosecution that the police department in Beaver Falls is the exclusive licensing agency when it comes to firearms for its residents would render ineffectual the language in section 6109(a) authorizing the already mentioned officials, sanctioned by the Legislature, to issue a license to "any person ... within this Commonwealth" without regard to residency. *See State v. Titus*, 10 Ohio Op.3d 300 (C.P. Montgomery Cty.1978) (Violation of local ordinance regard-

tation of firearms when carried or transported for purposes not prohibited by the laws of this commonwealth.
The Act of October 18, 1974, P.L. 768, No. 260, § 2, imd. effective; 18 Pa.C.S.A. § 6120(a).
To discount section 6120, when read in conjunction with sections 6106 and 6109, would render a result in which one could be technically in compliance with the requirements of section 6106, by having obtained a license in, for example, Elk County, yet still be, at the same time, in violation of a local ordinance—as exists in Beaver Falls by not re-registering the weapon with the local authorities. This, we believe, would be the equivalent of placing local ordinances over Legislative enactments, a procedure which is in direct conflict with section 6120 and would render subservient the rule of the majority to that of the minority. *Cf. Turner v. May Corp.*, 285 Pa.Super. 241, 244 n. 1, 427 A.2d 203, 204 n. 1 (1981) ("... a local rule of court is subordinate to laws promulgated by our Legislature.").

ing carrying a concealed weapon does not override proof that defendant is in contravention of State statute on the subject) and compare with *People v. Ramos*, 17 Mich.App. 515, 170 N.W.2d 189 (1969) (Statute did not require prosecution to prove that defendant did not have a license to carry a weapon in any county in the State, only that he did not have a license in the county where he resided).

Moreover, and most importantly, to affirm appellant's weapon conviction we would have to hold that proof of his nonlicensure by the police in Beaver Falls was the equivalent of not being licensed under section 6106(a), and, thus, ignore the specific reservation therein to the county treasurer to issue the same. This, we believe, would be an unwarranted shifting of the burden of proving licensure (an essential element of the offense charged) upon appellant, i.e., showing that he secured a license from an official outside the territorial confines of the offense.

■ Albeit general rules as to presumptions and burden of proof in criminal cases apply in prosecutions for carrying and possession of weapons, *see* 94 C.J.S., Weapons, § 13a, there are limits to which this sphere of guilt will extend. For example, it will be recalled that *In re Winship's* standard of proof was looked to by our Supreme Court in *McNeil* in requiring that absence of licensure, an essential element of the offense in section 6106(a), had to be established by the prosecution "beyond a reasonable doubt". As a result thereof, the *onus probandi* was lifted from the shoulders of the defendant and placed on those of the prosecution as to this elemental aspect of the offense, and the ruling seemed to refocus attention on the admonition that:

> "a State must prove every ingredient of an offense beyond a reasonable doubt and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense."

*Commonwealth v. McFarland, supra,* 252 Pa.Super. at 531, 382 A.2d at 469, *quoting Patterson v. New York,* 432 U.S. 197, 215, 97 S.Ct. 2319, 2330, 57 L.Ed.2d 281 (1977).

■ To hold that the prosecution had satisfied its burden, we believe, would have required the trier of fact to make an unwarranted inference of the presumed fact (nonlicensure under section 6106(a)) from the proven fact of appellant's nonlicensure in the City of Beaver Falls. This presumption, being a procedural device adhered to in Pennsylvania,

> not only permits an inference of the "presumed" fact, but also shifts to the opposing party the burden of producing evidence to disprove the presumed fact. Failure to meet this burden of production will normally result in binding instructions on the issue of the presumed fact's existence in favor of the party invoking the presumption. But the notion of a directed verdict against a criminal defendant is contrary to accepted tenets of criminal justice. Placing the burden of production on a defendant under the threat of such a sanction would run afoul of the presumption of innocence, *see Commonwealth v. Bonomo,* 396 Pa. 222, 229–230, 151 A.2d 441, 445–446 (1959), as well as the defendant's privilege of declining to testify. Thus, where the presumed fact comprises an element of the crime charged, the inference authorized by a presumption can never be compelled by the court. *See generally Commonwealth v. Turner,* 456 Pa. 116, 317 A.2d 298 (1974).

*Commonwealth v. DiFrancesco,* 458 Pa. 188, 193 n. 3, 329 A.2d 204, 207 n. 3 (1974). It requires noting that in *DiFrancesco* our Supreme Court, in accepting a statutory inference in a criminal case involving driving while under the influence of intoxicating liquor, held that when an inference is used in a criminal case such inference must meet the "beyond a reasonable doubt" standard of proof. The reasonable doubt standard requires that when the inferred fact is an essential element of the crime charged, that fact must logically flow from the given fact beyond a reasonable doubt. *Commonwealth v. Slaybaugh,* 468 Pa. 618, 624, 364 A.2d 687, 690 (1976). Thus, to sustain appel-

lant's conviction at bar would be the equivalent of reverting to the pre-*McNeil* practice of requiring the defendant to come forward with evidence of nonlicensure, or, absent such proof, cause him to suffer a conviction premised upon a presumption of guilt rather than proof beyond a reasonable doubt. *See* McCormick on Evidence, § 346 at 988 Point 2 *(Presumptions)* (3d ed. 1984).

In applying the reasonable doubt standard of proof to section 6106(a)'s licensure requirement, which of necessity would apply equally to section 6109, we are of the opinion that the inferred fact of nonlicensure does not flow logically beyond a reasonable doubt from the mere established fact of nonlicensure in the City of Beaver Falls. The reason is that it is not improbable that a resident of one of the 67 counties in Pennsylvania could secure a license where he resides, and, upon moving or traveling to a different area within the Commonwealth, be in compliance with our reading of section 6106 as to licensing, yet be in violation of a local ordinance (as exists in the City of Beaver Falls). Therefore, a *reasonable* doubt would arise that a conviction could be based upon an impermissible inference/presumption.

■ The prosecution could have avoided the result we reach on the weapon conviction simply by having presented a certificate from the Commissioner of the State Police documenting a search of his records and finding that appellant had not been issued a license by any authorized official within the Commonwealth. It failed to do so. Accordingly, we find that the conviction of appellant under section 6106 must be reversed, lest we affirm a conviction on less than "beyond a reasonable doubt" guidelines.

However, the same result does not obtain as to appellant's conviction for former convict not to own, possess or control a firearm. 18 Pa.C.S.A. § 6105.

■ Testimony was presented at trial by the arresting officer that appellant was in possession of a .357 Magnum. Also, the Clerk of Courts of Beaver County appeared and

established appellant's conviction of a crime of violence in this Commonwealth (i.e., burglary) in 1978. Lastly, although no testimony appears of record as to barrel length, the weapon in question was admitted into evidence, and, this, of necessity, rendered it subject to view by the jury. *See Commonwealth v. Jennings*, 285 Pa.Super. 295, 427 A.2d 231 (1981). Consequently, based on the aforesaid, we find, beyond a reasonable doubt, that sufficient evidence was presented to uphold appellant's section 6105 conviction and judgment of sentence.

▪ We see no need to remand for resentencing, however, because by imposing concurrent terms of equal duration for two offenses catalogued as misdemeanors of the first degree, the court below issued the maximum term possible for either offense. *See* 18 Pa.C.S.A. §§ 1104, 6119; *see also Commonwealth v. Nelson*, 337 Pa.Super. 292, 486 A.2d 1340 (1984).

As a result, we reverse the conviction and vacate the judgment of sentence as to carrying a firearm without a license, but we affirm the sentence entered for a convict not to possess a firearm.

OLSZEWSKI, J., files a concurring opinion.

OLSZEWSKI, Judge, concurring:

While I concur in the result reached by the majority today, I question the efficacy of the statutory scheme. Under current law, a person need only possess a license to carry a gun. Possess that license he must; produce it— even under threat of prosecution—he need not. The burden in a prosecution under § 6106 falls squarely on the Commonwealth to prove, beyond a reasonable doubt, non-licensure. *Commonwealth v. McNeil*, 461 Pa. 709, 337 A.2d 840 (1975).

As the majority suggests, proof of nonlicensure may entail recourse to the central depository of the Pennsylvania State Police, an arguably unwieldy procedure.

An alternative may be to amend 18 Pa.C.S. § 6106 to require carrying and exhibiting the license on demand. Following the rule for drivers' licenses, the statute might prescribe:

1) At all times when engaged in conduct defined by § 6106(a), every licensee shall possess a firearms license issued to that licensee. Upon demand by a police officer, the licensee shall exhibit the license. To provide proof of identity, the licensee may be required to write the licensee's name while in the presence of the officer.

2) No person shall be convicted for violation of this section if the person, within five days, produces at the office of the issuing authority or the arresting officer, a firearms license valid in this Commonwealth at the time of the arrest.

*Cf.* 75 Pa.C.S. § 1511.